# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF ARKANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSOURI; and STATE OF MONTANA,<br><br>*Plaintiffs*,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; THE UNITED STATES OF AMERICA,<br><br>*Defendants.* | Case No. 1:22-cv-113-HSO-RPM<br><br>**Memorandum of Authorities Supporting Plaintiffs' Response in Opposition to Motion to Intervene** |

This litigation turns on a single question of law: whether the Anti-Racism Rule exceeds the agency's statutory authority. The parties have already litigated that question. And this Court has already ruled that "[t]he Secretary lacks authority to 'identif[y]' an activity as an 'activit[y] specified under [the statute]' when the activity does not satisfy the very definition of such activities set forth in the statute." *Colville v. Becerra*, 2023 WL 2668513, at *19 (S.D. Miss. Mar. 28, 2023). Apart from standing (which this Court also addressed), nothing else needs to be litigated at summary judgment. And time is short,

1

since the current MIPS performance year ends in early 2024. *See Timelines and Important Deadlines PY 2023*, CMS, perma.cc/3ARG-4C2Y. Hence why this Court granted Plaintiffs leave to file a fast motion for summary judgment due one day after this opposition. *See* Doc. 73.

Yet nine groups have now moved to intervene. Movants' only interest is their concern that, if this Court declares that the Rule is ultra vires, that ruling will hinder "'the well-being, education, and economic security'" of people they purport to represent. Mot. (Doc. 62) 6. Yet, despite that interest, they filed their motion to intervene almost two months after this Court ruled on that legal question and more than one year after Plaintiffs filed this case. *Compare* Doc. 1 (complaint filed May 5, 2022), *and* Doc. 52 (order denying motion to dismiss filed March 28, 2023), *with* Doc. 61 (motion to intervene filed May 11, 2023).

This Court should deny Movants' requests for intervention. The motion is untimely because Movants knew of this litigation long before they filed and waited until after the Court had already ruled on the legal question they care about. Moreover, their interest is already adequately represented by Defendants, who purport to represent all Americans and strongly resist Plaintiffs' lawsuit. Movants' interests can only be vindicated in this case by defending the Rule's legality, and there is no daylight between Defendants and Movants on whether anti-racism plans are within the definition of "clinical practice improvement activities." For similar reasons, Movants' participation at this stage will needlessly increase the complexity of this time-sensitive litigation

without any corresponding benefits. Any expertise that Movants have about discrimination in healthcare is irrelevant to the pure question of statutory interpretation teed up in this case and, in all events, can be adequately expressed in an amicus brief. The Court should deny intervention.

**I.      Movants are not entitled to intervention as of right.**

Intervention as of right has four requirements, *see* Fed. R. Civ. P. 24(a)(2), and a movant who cannot "meet any one of" them "cannot intervene as a matter of right." *Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir. 1984).[1] One is "inadequate representation," and in this Circuit, the movant bears "the burden of demonstrating" it. *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (per curiam). Thus, Movants cannot intervene unless they articulate a "direct, substantial, legally protectable interest" in this case and prove that no existing party will "adequately represent[]" that interest. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (cleaned up); *Viterna*, 740 F.2d at 355.

While inadequacy is a low bar in many cases, the Fifth Circuit recognizes a presumption of adequate representation "when the party seeking intervention has the same ultimate objective as a party to the suit." *Viterna*, 740 F.2d at 355 (cleaned up). Movants cannot overcome this presumption unless they show "'adversity of interest, collusion, or nonfeasance on the part of the existing party.'" *Helt v. Sethi Petroleum,*

---

[1] As discussed below, the Court should also deny intervention as of right because Movants' motion to intervene is untimely. *See infra*, Part II.

3

*L.L.C.*, 2022 WL 127977, at *1 (5th Cir. Jan. 13, 2022). "Such adversity, collusion, or nonfeasance must be more than merely theoretical; there must be a 'serious probability' that the existing party and the movant may not share the same ultimate objective." *Id.*

The presumption of adequacy easily and obviously defeats intervention as of right in this case. The only way to vindicate Movants' alleged interests is to defend the Rule's legality—the only question raised in this case. But Defendants have already done that: they expressly argued, on the merits, that the Rule is consistent with the relevant statutory requirements and is not ultra vires. Doc. 47 9-13. Movants fail to identify any problem with Defendants' position in relation to that issue. *See* Mot. 15-16 (conclusorily asserting that Defendants "barely refuted" Plaintiffs' merits arguments and then endorsing Defendants' position that the Rule "falls within HHS's authority"). That's not surprising because Defendants and Movants have the "same ultimate objective," *Helt*, 2022 WL 127977, at *2, in this case: "to defend the antiracism rule," Mot. at 6. And as this Court's ruling explains, both can do so only by showing that anti-racism plans are within the relevant statutory definition. *See Colville*, 2023 WL 2668513, at *19.

Movants have not rebutted the presumption that Defendants adequately represent them—in fact, they don't even *try*. Movants make no attempt to argue collusion, adversity, or failure of duty; and any attempt to do so would fail (besides being brand new in a reply brief). Merely having an interest that "differ[s] in detail at some point" from Defendants is not sufficient to overcome the presumption of adequacy. *United States v. Louisiana*, 90 F.R.D. 358, 364 (E.D. La. 1981). Neither is having

4

"[d]ifferences of opinion" about proper policies, or even disagreements over "an existing party's litigation strategy or tactics used in pursuit thereof." *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022); *contra* Mot. at 15.

In the Fifth Circuit, a second presumption applies too. "[The Department of Health and Human Services'] presence as [Defendant] in this action creates" another, stronger "presumption of adequate representation." *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 2011 WL 13160367, at *2 (N.D. Tex. Nov. 14, 2011) (quoting *Baker v. Wade*, 743 F.2d 236, 241 (5th Cir. 1984)). "[W]here the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required." *Hopwood*, 21 F.3d at 605.

Movants certainly can't overcome that presumption. Defendants are vigorously resisting this lawsuit. That's not surprising, since, as the official who administers and oversees the agency's rules and regulations, the Secretary has every incentive to defend those policies against legal challenge. So does Defendants' counsel, the Attorney General, who is the "chief law-enforcement officer of the Federal Government," *United States v. Cox*, 342 F.2d 167, 191 (5th Cir. 1965), with the duty to "supervise all litigation to which the United States, an agency, or officer thereof is a party," 28 U.S.C. §519; *accord id.* §516. "A party charged by law with representing the interests of the absent party will usually be deemed adequate." *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982), *cited approvingly in Baker*, 743 F.2d at 240 n.13. "The Attorney General undoubtedly affords" Movants' "interests adequate

5

representation." *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996). And the "lawyers for the Justice Department have given the Court no reason to think that they do not intend to prosecute this action vigorously to its conclusion." *Louisiana*, 90 F.R.D. at 364.

Because the government "is already a party," Movants "'must demonstrate that [their] interest is in fact different from that of the [government] and that the interest will not be represented by the [government].'" *Hopwood.*, 21 F.3d at 605. They cannot. Movants suggest that Defendants' interest is in "enhancing the health and well-being of all Americans," while Movant's interest is only in enhancing the health and well-being of racial minorities. Mot. at 17. But those interests, "while they may differ in detail at some point, have an overriding similarity; indeed they are identical," *Louisiana*, 90 F.R.D. at 364—Movants' interests are *a subset* of Defendants' interests. "In all of [this Circuit's] cases permitting intervention, the incongruity of interests was far more pronounced" than it is here. *Veasey v. Perry,* 577 F. App'x 261, 262 (5th Cir. 2014).

Moreover, "[t]he Fifth Circuit has previously ruled that this type of abstract argument is insufficient to satisfy Rule 24(a)." *Brackeen v. Zinke,* 2018 WL 10561984, at *3 (N.D. Tex. June 1, 2018); *see Louisiana*, 90 F.R.D. at 364 (rejecting argument that "representation of [Movant's] interests by the United States is necessarily inadequate because the United States is charged solely with acting in the best interests of the entire population, while applicants … have as their focal and primary interest the welfare of the state's Blacks"); *Hopwood*, 21 F.3d at 605 (rejecting contention that "the State is not

in as good a position to bring in evidence of present effects of past discrimination and current discrimination" because they "are sharply focused on preserving the … policy" at issue). Movants "share[] the same ultimate objectives as current Defendants— namely, a declaration from this Court that the [Rule] is [lawful]." *Brackeen,* 2018 WL 10561984, at *3. Indeed, the "only issue before the court is the validity of" the Anti-Racism Rule, and "the Attorney General, in defending that [Rule], can assert the rights of all [citizens] affected by [it], including the … rights of [Movants]." *Ingebretsen,* 88 F.3d at 281; *accord Villas at Parkside Partners v. City of Farmers Branch*, 245 F.R.D. 551, 555 (N.D. Tex. 2007) ("despite any associational policy goals of [movant], both [movant] and the [government] seek to uphold and enforce the specific ordinance passed by the City Council").

Because Movants cannot "demonstrate[] that [Defendants] will not strongly defend [the Rule]," or "show[] that they have a separate defense of the [Rule] that [Defendants] ha[ve] failed to assert," this Court should deny intervention as of right. *Hopwood*, 21 F.3d at 606.

**II.    Movants should be denied permissive intervention.**

This Court should also deny permissive intervention. Though Rule 24(b) lists a few factors that must be considered, this Court "enjoys very broad discretion" in denying permissive intervention and "can consider almost any factor rationally relevant." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999); *accord In re Adilace Holdings, Inc.,* 548 B.R. 458, 463 (Bankr. W.D. Tex.

7

2016) ("decision whether to allow intervention is wholly discretionary … even where each required element is met."). This Court should deny permissive intervention for several reasons.

***First***, Movants' motion is untimely.[2] "[A] would-be intervenor is required to 'move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation.'" *Cook Cnty. v. Texas*, 37 F.4th 1335, 1341-42 (7th Cir. 2022) (district court did not abuse its discretion in finding attempted intervention untimely after attempted intervenors' monthslong delay), *cert. denied sub nom. Texas v. Cook Cnty.*, 143 S. Ct. 565 (2023). "[T]he relevant starting point is 'not when [the movant] knew or should have known that his interests would be adversely affected but, instead, when he knew that he had an interest in the case.'" *St. Bernard Par.*, 914 F.3d at 974. Yet Movants waited about a year before seeking to intervene in this case, Doc. 61 (motion to intervene filed May 11, 2023), after Defendants moved to dismiss, and nearly two months after this Court ruled on that motion. That delay is undue. *See, e.g., Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 825 (5th Cir. 2003) (motion "was untimely, as [movants] clearly had notice that their interests … were challenged more than 1 ½ years before moving to intervene"); *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016) (denying intervention where movant "knew of his alleged interest in the case long before he filed

---

[2] The timeliness arguments that follow also apply to intervention as of right. *See St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 976 (5th Cir. 2019).

8

his motion"); *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8-9 (1st Cir. 2009) (movant delayed a few months after acquiring the requisite knowledge); *U.S. v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (movant "reasonably should have known of their interests in the case at least months before it actually filed its motion to intervene").

Movants offer no plausible justification why they sat on their rights for so long.[3] And their delay will cause prejudice. This Court has already granted a scheduling order allowing Plaintiffs to file "an early dispositive motion" "by June 9, 2023." *See* Doc. 73. Allowing Movants to intervene now "will unnecessarily delay the proceedings and multiply the filings and time required by the court to consider this case." *Villas at Parkside*, 245 F.R.D. at 556. It would risk another round of briefing and potential discovery fights that will prevent a ruling before the MIPS year ends in early 2024. Where, as here, intervention would "unduly delay the proceedings," *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987), the Court should deny intervention. *See Handshoe v. Perret*, 270 F. Supp. 3d 915, 936-37 (S.D. Miss. 2017) (Ozerden, J.) (finding motion untimely and "would unduly prejudice Defendants" after

---

[3] Movants argue that an earlier motion would have been "premature" because "Defendants' motion provided a jurisdictional basis for the Court to dispose of Plaintiffs' suit." Mot. 11. But they later argue that they want to challenge "Plaintiffs' theory of standing … as a matter of law." *Id.* at 17. Movants can't have it both ways. Movants could have made these and other legal arguments alongside Defendants.

9

parties filed "multiple dispositive motions and expended significant resources defending these claims" more than one year after movant learned "of its interest").

***Second***, as explained above, Movants' interests are duplicative and already well-represented by Defendants. "*Any* delay caused by [their] intervention," then, would be "undue." *League of Women Voters of Mich. v. Johnson*, 2018 WL 3861731, at *2 (E.D. Mich. Aug. 14, 2018) (emphasis added). When "'intervention as of right is decided based on the government's adequate representation,'" as it should be here, "'the case for permissive intervention diminishes, or disappears entirely.'" *Me. Republican Party v. Dunlap*, 2018 WL 2248583, at *2 (D. Me. May 16, 2018); *Hopwood*, 21 F.3d at 605-06. Defendants' adequate representations means that Movants' "intervention would simply be piling onto the arguments advanced by the other parties to this litigation," *Donald J. Trump for President, Inc., v. Bullock*, 2020 WL 5517169, at *2 (D. Mont. Sept. 14, 2020); would duplicate the agency's efforts to "address the pertinent legal issues before the court," *Villas at Parkside*, 245 F.R.D. at 556; and "would do little more than needlessly increase costs and delay disposition of the case," *Johnson v. City of Dallas*, 155 F.R.D. 581, 586 (N.D. Tex. 1994). "At this point, 'intervention is unnecessary'" and "'unwarranted.'" *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *39 (E.D. Tex. Oct. 21, 2020).

The added burden of Movants' participation here is not small. Their participation is "likely to delay the main action as the case would expand to [nine] defendants." *Judicial Watch, Inc. v. Logan*, Doc. 76 at 4, No. 2:17-cv-8948 (C.D. Cal. Juy 12, 2018). Worse,

Movants' interests are "not dissimilar to the interests of any number of" similar organizations. *Donald J. Trump for President*, 2020 WL 5517169, at *2. "If this Court were to permit [Movants] to intervene," it "would be hard pressed to deny future motions seeking intervention from any number of the hundreds of organizations who engage in such efforts." *Id.*

These concerns cannot be offset by any "expertise" that Movants might have about racial discrimination in medicine. Mot. 16-18. For one, such purported expertise is simply not relevant to the resolution of whether the agency exceeded its statutory authority. *See Veasey*, 577 F. App'x at 263 (denying intervention where public interest group wanted to "show evidence" of its own). On that wholly legal question, this Court has already ruled based on statutory text and information only *Defendants* could have provided in the Rule itself. *See Colville*, 2023 WL 2668512, at *18-20. Movants' "expertise" argument is a concession that they plan to inject irrelevant, improper arguments and materials into this case, since it's a "fundamental rule of administrative law that reviewing courts must judge the propriety of agency action solely by the grounds invoked by the agency." *Calcutt v. FDIC*, 2023 WL 3571460, at *1 (U.S. May 22, 2023) (cleaned up).

For another, Movants' "expertise may be effectively deployed through amicus briefs and by providing assistance to the [government]." *Daggett*, 172 F.3d at 113. Especially where the "issues involved are primarily legal," Movants can "adequately voice whatever concerns to the Court they have by appearing as amici rather than as

11

intervenors." *Johnson*, 155 F.R.D. at 586. Amicus status, which Plaintiffs do not oppose, both "protect[s] the proposed intervenors' interests" and "allow[s] the district court the benefit of hearing proposed intervenors' concerns," "views," and "expertise." *Bradley v. Milliken*, 828 F.2d 1186, 1194 (6th Cir. 1987); *accord Viterna*, 740 F.2d at 359 ("'Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.'"). Although Movants "may have ready access to more evidence than the [government]," there is "no reason they cannot provide this evidence to the [government]." *Hopwood*, 21 F.3d at 605. And it isn't clear that they'd have relevant evidence in any event. For example, a central merits question is whether CMS showed that any "relevant eligible professional organizations and other relevant stakeholders identif[ied]" anti-racism plans "as improving clinical practice or care delivery," 42 U.S.C. §1395w-4(q)(2)(C)(v)(III), a question that this Court will resolve by looking to the face of the Rule and its citations, *see Colville*, 2023 WL 2668513, at *20. Movants routinely file amicus briefs, and that role is most appropriate here as well.

## CONCLUSION

The Court should deny Movants' motions to intervene.

Dated: June 8, 2023                                              Respectfully submitted,

*s/ Scott G. Stewart*                                            *s/ Cameron T. Norris*
LYNN FITCH                                                       Cameron T. Norris*
   *Attorney General*                             CONSOVOY MCCARTHY PLLC
Scott G. Stewart (MS Bar No. 106359)                             1600 Wilson Blvd., Ste. 700
   *Solicitor General*                            Arlington, VA 22209
Justin L. Matheny (MS Bar No. 100754)                            (703) 243-9423
   *Deputy Solicitor General*                     cam@consovoymccarthy.com
MISSISSIPPI ATTORNEY
GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
scott.stewart@ago.ms.gov
justin.matheny@ago.ms.gov


*s/ Edmund G. LaCour Jr.*                                        *s/ Nicholas J. Bronni*
STEVE MARSHALL                                                   LESLIE RUTLEDGE
   *Attorney General*                                *Attorney General*
Edmund G. LaCour Jr.*                                            Nicholas J. Bronni*
   *Solicitor General*                               *Solicitor General*
OFFICE OF THE ALABAMA                                            OFFICE OF THE ARKANSAS
ATTORNEY GENERAL                                                 ATTORNEY GENERAL
501 Washington Ave.                                              323 Center Street, Suite 200
Montgomery, AL 36130                                             Little Rock, AR 72201
(334) 353-2196                                                   (501) 682-6302
Edmund.LaCour@AlabamaAG.gov                                      nicholas.bronni@arkansasag.gov

<div style="display: flex;">

<div>

*s/ Aaron J. Silletto*
DANIEL CAMERON
   *Attorney General*
Aaron J. Silletto*
   *Assistant Attorney General*
KENTUCKY OFFICE OF THE
ATTORNEY GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky
(502) 696-5439
Aaron.Silletto@ky.gov


*s/ Joshua M. Divine*
ANDREW BAILEY
   *Attorney General*
Joshua M. Divine***
   *Solicitor General*
Samuel C. Freedlund*
OFFICE OF THE MISSOURI
ATTORNEY GENERAL
815 Olive Street
Suite 200
St. Louis, MO 63101
(314) 340-4869
Josh.Divine@ago.mo.gov
Samuel.Freedlund@ago.mo.gov

</div>

<div>

*s/ Scott St. John*
JEFF LANDRY
   *Attorney General*
Elizabeth B. Murrill*
   *Solicitor General*
Scott St. John (MS Bar No. 102876)
   *Deputy Solicitor General*
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766
murrille@ag.louisiana.gov


*s/ Christian Corrigan*
AUSTIN KNUDSEN
   *Attorney General*
Christian Corrigan***
   *Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders Street
Helena, MT 59601
christian.corrigan@mt.gov

</div>

</div>

*pro hac vice
**pro hac vice pending
***pro hac vice forthcoming

## CERTIFICATE OF SERVICE

      I e-filed this opposition with the Court, which will email everyone requiring service.

      Dated: June 8, 2023                                     *s/ Cameron T. Norris*