**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF ARKANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSOURI; and STATE OF MONTANA, <br> *Plaintiffs*, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; THE UNITED STATES OF AMERICA, <br> *Defendants*. | No. 1:22-cv-113-HSO-RPM |

## REBUTTAL IN SUPPORT OF PROPOSED DEFENDANT INTERVENORS' MOTION TO INTERVENE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

ARGUMENT ............................................................................................... 2

    I.    Proposed Intervenors Are Entitled to Intervene as of Right ......................... 2

        A.    Neither presumption of adequacy applies ........................................ 2

        B.    Proposed Intervenors have rebutted any presumption of adequacy ................................................................................ 8

    II.    Permissive Intervention, Not Amici Status, Is the Alternative to Intervention of Right ............................................................................. 13

        A.    Proposed Intervenors' motion to intervene is timely ...................... 14

        B.    None of the parties' discretionary factors counsel against permissive intervention ............................................................. 15

CONCLUSION ........................................................................................... 16

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES:**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................................10

*Baker v. Wade,*
    743 F.2d 236 (5th Cir. 1984) ............................................................................................4

*Baker v. Wade,*
    769 F.2d 289 (5th Cir. 1985) (en banc) ...........................................................................5

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ................................................................................... *passim*

*Bush v. Viterna,*
    740 F.2d 350 (5th Cir. 1984) ............................................................................................7

*Cook Cnty., Ill. v. Texas,*
    37 F.4th 1335 (7th Cir. 2022) .........................................................................................14

*Daggett v. Comm'n on Governmental Ethics and Election Practices,*
    172 F.3d 104 (1st Cir. 1999) ...........................................................................................12

*Entergy Gulf States La., L.L.C. v. EPA,*
    817 F.3d 198 (5th Cir. 2016) ................................................................................... *passim*

*Franciscan All., Inc. v. Azar,*
    414 F. Supp. 3d 928 (N.D. Tex. 2019) ...........................................................................13

*Franciscan All., Inc. v. Becerra,*
    47 F.4th 368 (5th Cir. 2022) ...........................................................................................13

*Franciscan All., Inc. v. Becerra,*
    843 F. App'x 662 (5th Cir. 2021) ...................................................................................13

*Franciscan All., Inc. v. Burwell,*
    227 F. Supp. 3d 660 (N.D. Tex. 2016) ...........................................................................13

*Guenther v. BP Ret. Accumulation Plan,*
    50 F.4th 536 (5th Cir. 2022) ............................................................................................7

*Hopwood v. Texas,*
    21 F.3d 603 (5th Cir. 1994) ...............................................................................3, 4, 5, 12

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
    88 F.3d 274 (5th Cir. 1996) ............................................................................4

*John Doe No. 1 v. Glickman*,
    256 F.3d 371 (5th Cir. 2001) ...................................................................3, 14

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ...................................................................9, 10

*League of United Latin Am. Citizens v. Clements*,
    884 F.2d 185 (5th Cir. 1989) ............................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).......................................................................................10

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923).........................................................................................4

*Miller v. Vilsack*,
    No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022)....................3, 4

*In re Multidistrict Vehicle Air Pollution M.D.L., No. 31*,
    481 F.2d 122 (9th Cir. 1973) ............................................................................4

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) ..........................................................................16

*NextEra Energy Cap. Holdings, Inc. v. D'Andrea*,
    No. 20-50168, 2022 WL 17492273 (5th Cir. Dec. 7, 2022)....................13

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ....................................................................1, 15

*Sommers v. Bank of Am., N.A.*,
    835 F.3d 509 (5th Cir. 2016) ..........................................................................14

*St. Bernard Par. v. Lafarge N. Am., Inc.*,
    914 F.3d 969 (5th Cir. 2019) ..........................................................................14

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ..........................................................................15

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ...................................................................6, 8, 10

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*,
    332 F.3d 815 (5th Cir. 2003) ..........................................................................14

*United States v. Covington Cnty. Sch. Dist.*,
  499 F.3d 464 (5th Cir. 2007) ................................................................................14

*United States v. Cox*,
  342 F.2d 167 (5th Cir. 1965) ................................................................................4, 5

*United States v. Louisiana*,
  90 F.R.D. 358 (E.D. La. 1981)................................................................................7

*United States v. Phillips*,
  210 F.3d 345 (5th Cir. 2000) ................................................................................4

*United States v. Texas*,
  566 F. Supp. 3d 605 (W.D. Tex. 2021)................................................................4

*Veasey v. Perry*,
  577 F. App'x 261 (5th Cir. 2014) ................................................................................4

*Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
  834 F.3d 562 (5th Cir. 2016) ................................................................................3, 4, 11, 12

**STATUTE:**

42 U.S.C. § 1395w-4(q)(2)(B)(iii) ................................................................................11

**RULE:**

Fifth Circuit Rule 41.3 ................................................................................5

Proposed Intervenors' case for intervention as of right is largely uncontested.  No one disputes that Proposed Intervenors' strong interests in this suit could be impaired, and that the motion is timely and not prejudicial. The dispute over the Proposed Intervenors' entitlement to intervene as of right thus turns only on the requirement that existing parties—here, the Agency Defendants—may not adequately represent the Proposed Intervenors' interests.  To satisfy this requirement, Proposed Intervenors need to show only that the Agency Defendants' representation of their interests "'may be' inadequate," not that it will certainly be.  *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  This burden "is not a substantial one," *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014), and the Proposed Intervenors have satisfied it.

In an attempt to build a more substantial barrier to entry, both the Plaintiffs and the Agency Defendants invite this Court to apply exceptions that presume adequate representation.  But the "sovereign-interest" presumption does not apply to "governmental agenc[ies]" that are not "charged by law with representing the interests of" all citizens.  *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 & n.2 (5th Cir. 2016) (citation omitted).  It therefore does not apply here, where the Agency Defendants represent an agency that seeks to preserve its rulemaking authority, rather than to protect the United States' interest in its citizens' health. And the "ultimate-objective presumption" does not apply where, as here, the party's and the proposed intervenors' interests "may not align precisely."  *Brumfield*, 749 F.3d at 346.  Proposed Intervenors' ultimate goal of defending an interpretation of the Anti-Racism Rule that best reduces health disparities for their members is not represented by any other party. This Court should therefore grant intervention as of right.

Proposed Intervenors also meet the permissive intervention standard because their motion

1

is timely and their defense of the Anti-Racism Rule shares common issues of law with the Agency Defendants. The parties' parade of discretionary considerations does not counsel against intervention.   Mere inconvenience is no basis for denying intervention, particularly where proposed intervenors bring valuable experience and expertise.   And amici status is insufficient to ensure Proposed Intervenors' meaningful participation.   Proposed Intervenors' voice should be heard in this litigation as a party to the case.

## ARGUMENT

**I.   Proposed Intervenors Are Entitled to Intervene as of Right.**

Neither party seriously disputes that Proposed Intervenors satisfy three of the four criteria for intervention as defendants of right. The parties claim only that the Agency Defendants adequately represent Proposed Intervenors' interest.  Defs.' Opp'n to Mot. to Intervene ("Defs.' Opp'n") at 4-10 & n.2, ECF No. 75; Plfs.' Resp. In Opp'n to Mot. to Intervene ("Plfs.' Opp'n") at 3-7, ECF No. 77.[1]  Not so.  Neither presumption of adequacy applies here.  And even if it did, the Proposed Intervenors have presented sufficient evidence to overcome it.

**A.  Neither presumption of adequacy applies.**

1. Both the Plaintiffs and the Defendants urge the Court to apply the sovereign interest presumption.  The Agency Defendants contend that the presumption applies because "this case involves . . . the federal government's sovereign interest 'in vindicating its citizens' constitutional rights' (as it relates to nondiscriminatory health care) and its quasi-sovereign interest in the health and well-being of its citizens."  Defs.' Opp'n at 5-6 (internal quotation marks omitted).  Plaintiffs echo that argument and contend that the presumption applies because the agency is defended by

---

[1] Plaintiffs relegate timeliness to a footnote in their opposition to mandatory intervention, only developing the argument for purposes of permissive intervention.  Plfs.' Opp'n at 3 n.1, 8-10.  As explained below, *see infra* at 14-15, and as Plaintiffs' briefing strategy suggests, denying mandatory intervention on the basis of proposed intervenors' timing would be improper.

"lawyers for the Justice Department."  Plfs.' Opp'n at 5-6.  These arguments lack merit.

The sovereign interest presumption arises *only* where a party to the case "is a governmental body or officer *charged by law* with representing the interests of the [intervenor]," and it is "*restricted … to those suits involving matters of sovereign interest*," such as where a state must represent the interests of all its citizens.  *Entergy*, 817 F.3d at 203 & n.2 (citation omitted) (first emphasis added).  Because agencies are usually not charged by law with representing the public interest, and because they generally advance the comparatively narrow interests of the agency rather than the broader interests of the public as a whole, the Fifth Circuit has repeatedly declined to apply the sovereign interest presumption in cases involving governmental agencies.  *See, e.g.*, *id.* at 203-204 n.2; *John Doe No. 1 v. Glickman*, 256 F.3d 371, 380-381 (5th Cir. 2001); *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *2-3 & n.4 (5th Cir. Mar. 22, 2022).

Because the Proposed Intervenors in this case seek to intervene in support of governmental agencies, the sovereign interest presumption does not apply.  The Agency Defendants are not "charged by law" with representing Proposed Intervenors' interests, and this suit does not involve a matter of sovereign interest.  *Entergy*, 817 F.3d at 203 n.2. *Entergy* is controlling on this point, and neither party contends that the Fifth Circuit has since backtracked from *Entergy*'s rule.  To the contrary, the Fifth Circuit has only reaffirmed its prior ruling.  In *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, the court reiterated that "the government-representative presumption does not inherently apply whenever a state or federal agency is a party."  834 F.3d 562, 569 n.7 (5th Cir. 2016).  And in *Miller*, the Court swiftly rejected a district court's application of the sovereign-interest presumption in a suit where the USDA, not the United States, was a party.  2022 WL 851782, at *2-3 & n.4.  These cases all differ from *Hopwood*, which involved a

3

"sovereign," not a "governmental agency," and pertained to "a matter of sovereign interest," not a department's efforts to maintain or exercise departmental authority.  *See Entergy*, 817 F.3d at 203 n.2 (citing *Hopwood*, 21 F.3d at 605; *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)); *Wal-Mart Stores, Inc.*, 834 F.3d at 569 n.7; *Miller*, 2022 WL 851782, at *2-3 & n.4.

None of the cases that the Agency Defendants cite discuss *Entergy* or suggest that it should be overruled.  And most are inapposite here either because they are non-binding, out-of-circuit cases, *compare In re Multidistrict Vehicle Air Pollution M.D.L., No. 31*, 481 F.2d 122, 131 (9th Cir. 1973) (similar) *with United States v. Phillips*, 210 F.3d 345, 351 n.4 (5th Cir. 2000) (explaining that this Court is not bound by decisions from other courts of appeals), or they do not consider the intervention of a private party in support of the federal government, *see, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923) (barring a state's attempt to intervene to defend its citizens from a federal law); *United States v. Texas*, 566 F. Supp. 3d 605, 638 (W.D. Tex. 2021) (holding that United States' sovereign interests gave it standing to bring enforcement action against state).

The State Plaintiffs' cases are no better.  The State Plaintiffs cobble together language from cases that pre-date *Entergy* (including *Hopwood*, which *Entergy* expressly distinguished) and insist that the sovereign-interest presumption applies to government agencies.  Plfs.' Opp'n at 5-6 (citing *United States v. Cox*, 342 F.2d 167, 191 (5th Cir. 1965); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996); *Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994); *Baker v. Wade*, 743 F.2d 236 (5th Cir. 1984)).  But those cases are all either distinguishable on their facts or not precedential at all.  For example, Plaintiffs' other Fifth Circuit cases—*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996), and *Veasey v. Perry*, 577 F. App'x 261, 262 (5th Cir. 2014)—are each distinguishable from this case for the same reasons that

the Fifth Circuit distinguished *Hopwood* in *Entergy*: those cases do not involve governmental agencies.  *See supra* at 3.  Plaintiffs also repeatedly cite *Baker*, a decision in which the Fifth Circuit initially dismissed an appeal brought by a would-be intervenor on the ground that the State of Texas adequately represented the intervenor's interest in defending the constitutionality of a state statute.  *See* Plfs.' Opp'n at 5.  But Plaintiffs fail to note that the panel decision cited by the Plaintiffs was subsequently vacated when the Fifth Circuit granted rehearing en banc.  *Cf.* Fifth Circuit Rule 41.3 ("Unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion[.]").  And on rehearing, the en banc Fifth Circuit "conclude[d] as a matter of law that [the prospective intervenor's] interests were inadequately represented" by the Texas attorney general.  *Baker v. Wade*, 769 F.2d 289, 292 (5th Cir. 1985) (en banc), *overruled on other grounds by Lawrence v. Texas*, 539 U.S. 558 (2003).[2]

2. The parties also suggest that the Court should apply a second presumption: the ultimate-objective presumption.  Although the Fifth Circuit has recognized a presumption of adequate representation "when the would-be intervenor has the same ultimate objective as a party to the lawsuit," that presumption "does not apply" when the interests of the would-be intervenor and the existing parties "*may not* align *precisely*."  *Brumfield*, 749 F.3d at 345 (quotation marks and citation omitted) (emphasis added).  The *Brumfield* court therefore held the presumption "d[id] not apply" even where "both" the state and intervenors "vigorously oppose[d] dismantling the voucher program" at issue.  749 F.3d at 345.  The court reasoned that the state and the intervenors' interests "may not align precisely" because the state had "many interests" at stake, whereas the intervenors

---

[2] Plaintiffs also cite the concurring opinion in *United States v. Cox*, for the contention that the Attorney General is "the chief law-enforcement officer of the Federal Government," but the case does not concern intervention.  342 F.2d 167, 191 (5th Cir. 1965).

were solely concerned with their ability to benefit from the program.  *Id.* at 345-346.

Just so here.  The Proposed Intervenors' interests and those of the Agency Defendants diverge in several material respects.  The Agency Defendants' primary interest is preserving the breadth of the agency's authority to identify clinical practice improvement activities.  Intervenors' Mem. In Support of Mot. to Intervene ("Mem.") at 17, ECF No. 62.  Proposed Intervenors' primary interest is defending an interpretation of the Anti-Racism Rule that best reduces racial health disparities.  *Id.*  As in *Brumfield*, this Court may not be able to "say for sure" at this point whether this divergence "will *in fact* result in inadequate representation, but surely [it] might, which is all that the rule requires."  *Brumfield*, 749 F.3d at 346.

The parties attempt to ratchet up the requirement, suggesting that intervention should be denied any time a proposed intervenor seeks the same general outcome as one of the parties.  *See* Defs.' Opp'n at 10 n.2 (arguing that Proposed Intervenors have the same ultimate objective as the Agency Defendants because both seek "a determination that the new activity is not *ultra vires*"); *see also* Plfs.' Opp'n at 4 ("The only way to vindicate Movants' alleged interests is to defend the Rule's legality").  But neither party provides any explanation for why the ultimate-objective presumption applies as broadly as they suggest.  They cannot.  Any broader application of the presumption would require a heightened showing of inadequacy every time a non-party sought intervention—an intervenor will almost always seek the same end result as one of the parties. Tellingly, the Agency Defendants tuck their entire ultimate-objective argument in a footnote, Defs.' Opp'n at 10 n.2, and rely on a case where the Fifth Circuit assumed without deciding that the ultimate-objective presumption applied.  *See Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015) ("[a]ssuming *arguendo* that one or both presumptions apply").

The State Plaintiffs also fail to offer a persuasive basis for their argument.  The case that

they primarily rely on articulates Proposed Intervenors' understanding of the presumption's requirements—that the ultimate-objective presumption should not apply unless the proposed intervenors' objective is "identical" to one of the parties, *Bush v. Viterna*, 740 F.2d 350, 356 (5th Cir. 1984)—not the Plaintiffs' more demanding standard. Their other cases are no better. *United States v. Louisiana*, is a forty-year old, unpublished, district court opinion that does not cite a single Fifth Circuit case in its ultimate-objectives analysis. 90 F.R.D. 358, 364 (E.D. La. 1981), *aff'd by* 669 F.2d 314, 315 (5th Cir. 1982). It determined that the would-be intervenors there—a group of Black community members in a school desegregation case—had different *reasons* than the United States for their interest in desegregation. *Id.* Here, by contrast, Proposed Intervenors have a different interest altogether— Proposed Intervenors' interest in defending an interpretation of the Anti-Racism Rule that best promotes the health of all individuals substantively differs from the Agency Defendants' interest in protecting their authority to define clinical practice improvement activities.[3] And in *Guenther v. BP Ret. Accumulation Plan*, proposed plaintiff-intervenors could not "point to an interest of theirs that is unique to and—at a minimum— *potentially* in conflict with" that of the plaintiffs. 50 F.4th 536, 545 (5th Cir. 2022).

3. Because neither presumption applies, Proposed Intervenors have only a "minimal" burden to show that the Agency Defendants may inadequately represent their interests. *Brumfield*, 749 F.3d at 345-346 (internal quotation marks omitted). Proposed Intervenors pointed to four reasons why that burden is met here: (1) the Agency Defendants have indicated a preference to resolve this case on procedural grounds; (2) the Agency Defendants lack the benefit of Proposed Intervenors' expertise; (3) the Agency Defendants' institutional interests may

---

[3] Moreover, the primary ground for denying intervention in *Louisiana*—and the ground on which the Fifth Circuit relied in affirming—was the untimeliness of proposed intervenors' motion. 90 F.R.D. at 361-363.

conflict with Proposed Intervenors' specific interests; and (4) the Agency Defendants' willingness to defend the rule may be tied to a particular administration. Mem. at 15-18. These interests are a sufficient basis on which to grant Proposed Intervenors' request for intervention as of right. Indeed, the parties make no attempt to argue that they could defeat intervention absent a presumption of adequacy. This Court should grant the motion.

**B.  Proposed Intervenors have rebutted any presumption of adequacy.**

Even if a presumption of adequacy applies, the Proposed Intervenors' burden to rebut that presumption would still be "relatively minimal." *League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). It merely requires "something more than speculation," *id.*, regarding how the parties' and the would-be intervenors' "interests diverge . . . in a manner germane to the case." *Texas*, 805 F.3d at 662. "[A]dversity of interest, collusion, or nonfeasance on the part of the existing party," meet this standard. *Brumfield*, 749 F.3d at 345. But other evidence of inadequacy will also suffice. *See Texas*, 805 F.3d at 662 n.5 (rejecting the implication that "'adversity of interest, collusion, or nonfeasance' are the *only* three ways to demonstrate inadequacy") (citation omitted). A presumption of adequacy can also be rebutted by differences in strategy that risk altering the timing or scope of the court's ruling. *See Entergy*, 817 F.3d at 205-206 (ultimate objective presumption overcome where one party's position may "result in a significantly delayed and narrower ruling"). Parties cannot defeat intervention by arguing that Proposed Intervenors must show that the agency "will not fully defend the new activity" and "will not adequately represent [intervenors'] interests." Defs.' Opp'n at 7. This Court "[need] not say for sure that [Agency Defendants'] . . . interests will in fact result in inadequate representation," but for four reasons, "surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 346.

*First*, the Agency Defendants' continued preference to resolve this case on procedural

grounds reflects a divergence of interests that is germane to this case.[4]  The State Plaintiffs

contend that anti-racism plans require medical providers to prioritize the health of some patients

above others.  Pls.' Mot. for Summary J. at 8-13, ECF No. 79.  This harmful theory risks

discouraging providers from addressing racial health disparities—an outcome that threatens the

health of the NAACP State Conference members and compromises the Collaborative's health

equity work.  Mem. at 15-16.  A decision on the merits is necessary to repudiate Plaintiffs' theory

and prevent harm to Proposed Intervenors.  By contrast, a procedural ruling is more than sufficient

to preserve the Agency Defendants' rulemaking authority.  Indeed, the Agency Defendants'

opposition declines to reassure this Court that they will defend the Rule on the merits.  *See, e.g.*,

Defs.' Opp'n at 7 (refusing to state what "their future briefing or defense of this case" will entail).

      The Agency Defendants suggest that differences in litigation strategy never bear on the

inadequacy analysis.  *Id.* at 6-7.  But the Fifth Circuit has squarely held that if different interests

might cause the potential intervenor and existing party to have different views on "how to carry

out the ultimate objective," the presumption is rebutted.  *La Union del Pueblo Entero v. Abbott*,

29 F.4th 299, 308 (5th Cir. 2022).  Although the Agency Defendants attempt to distinguish *La

Union* by pointing to the presence of additional defendants, that fact was relevant in *La Union*

only because—had they been willing to defend the law—the proposed intervenors' interests may

have been represented notwithstanding the state's focus on procedural arguments.  *See id.*  Here,

by contrast, the Agency Defendants are the only defendants.  If their procedural arguments

succeed, this case will never reach a decision on the merits.  Nor does the procedural posture of

---

[4] The Plaintiff States contend in a footnote that Proposed Intervenors cannot take issue with the
Federal Defendants' procedural arguments because the Proposed Intervenors may also challenge
standing.  Plfs.' Opp'n at 9 n.3.  Plaintiffs misunderstand Proposed Intervenors' argument.  The
inadequacy arises not from the mere fact that the Agency Defendants raised procedural arguments,
but from the outsized influence the Agency Defendants gave these arguments.

*La Union* provide a valid basis for distinguishing the case.  This Court's ruling on the motion to dismiss did not foreclose the agency's standing and immunity arguments as a matter of law; it merely found that Plaintiffs' allegations met the plausibility standard sufficient to provide fair notice of their claims at the motion-to-dismiss stage.  Mem. Opinion & Order Granting In Part & Denying In Part Defs.' Mot. to Dismiss ("Mem. Opinion & Order") at 19, 29-47, ECF No. 52; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Because the State Plaintiffs are required to support each of the standing elements "in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), the Agency Defendants may renew their procedural arguments at the summary judgment stage.

In any event, the Fifth Circuit has held that differences in litigation strategy can overcome a presumption of adequacy in many other cases, including cases that did not share *La Union*'s unique array of parties and procedural posture.  For example, in *Brumfield*, although the State of Louisiana and the parents both "vigorously oppose[d] dismantling the voucher program," the court concluded that the parents had overcome the "ultimate objective" presumption because the State had already made legal concessions that the parents contested.  749 F.3d at 345-346.  In *Texas*, "[a]ssuming arguendo" that the presumption applied, the court held that individuals who would have been eligible for benefits under the challenged federal program were entitled to intervene because the federal government took a legal position on the ability of States to issue drivers' licenses to benefit recipients adverse to the intervenors.  805 F.3d at 662-663.  Similarly, in *Entergy*, the court concluded that the Sierra Club overcame the presumption by showing that it held different positions on case management from the EPA, including whether to stay or bifurcate the case, and how to identify and protect confidential information.  817 F.3d at 204-205. Finally, in *Wal-Mart*, a trade group demonstrated adversity of interest with the defendant

regulatory commission because the intervenors sought a merits ruling, while the commission would have "accept[ed] a procedural victory." 834 F.3d at 569.

Plaintiffs, for their part, contend that the Agency Defendants mounted a robust defense of the Anti-Racism Rule on the merits. Plfs.' Opp'n at 4. The record does not bear out that version of events. As this Court noted, the Agency Defendants failed to even address Plaintiffs' argument that "clinical practice or care delivery must be construed in light of the examples of clinical practice improvement activities set forth at § 1395w-4(q)(2)(B)(iii)." Mem. Opinion & Order at 47 (internal quotation marks and citation omitted). Proposed Intervenors would address that argument by explaining that the statute sets a floor for what *subcategories* of clinical practice improvement activities are required, not a ceiling for what clinical practice improvement activities are permitted, and that effective anti-racism plans may include the very clinical practice improvement activities listed in 42 U.S.C. § 1395w-4(q)(2)(B)(iii). The Agency Defendants' failure to raise these, or *any*, responses to Plaintiffs' argument at the outset further indicate their preference for a procedural victory.

*Second*, even if a procedural dismissal could theoretically satisfy Proposed Intervenors' interests, the Agency Defendant's arguments failed to do so here. In rebutting Plaintiffs' argument that the Anti-Racism Rule impeded their ability to enforce their anti-discrimination statutes, the Agency Defendants failed to address whether any of those laws apply to physicians or have ever been enforced against racial health equity initiatives. Worse still, the Agency Defendants failed to point out that neither Mississippi nor Alabama has a Civil Rights Act at all. "The lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation may be inadequate." *Brumfield*, 749 F.3d at 346; *see also Daggett v. Comm'n on Governmental Ethics and Election Practices*,

172 F.3d 104, 112 (1st Cir. 1999) (recognizing that "refusal to present obvious arguments could be so extreme as to justify a finding that representation by the existing party was inadequate.").

*Third*, Proposed Intervenors have an interest in casting the Anti-Racism Rule broadly enough to promote the health of the thousands of NAACP Conference members who are in the Medicare program and further the Collaborative's partnerships.  Mem. 6-8, 17.  By contrast, the State Plaintiffs' *ultra vires* argument creates an incentive for the Agency Defendants to construe the rule as narrowly as possible.  Moreover, the administrative record may reveal stakeholders who believe that anti-racism plans are necessary to improve clinical practice or care delivery because CMS's inaction regarding health equity has left racial disparities in place.  The Agency Defendants will be unlikely to rely on these statements when defending the Anti-Racism Rule.

The parties' insistence that Proposed Intervenors explain this divergence with greater specificity presents an obvious catch-22: If Proposed Intervenors do not wait to see how the Agency Defendants defend the Anti-Racism Rule, their showing of inadequacy would be insufficiently specific; if Proposed Intervenors do wait, their motion would be untimely.  (Indeed, Plaintiffs already contend that Proposed Intervenors have somehow sat on their rights.  Plfs.' Opp'n at 8-10.)  This double bind is incompatible with the Fifth Circuit's "broad policy favoring intervention," *Wal-Mart Stores, Inc.*, 834 F.2d at 569.  The Court should therefore reject this approach.

Nor can Plaintiffs' circular view of *Hopwood* carry the day.  In Plaintiffs' view, Proposed Intervenors cannot overcome the ultimate-objective presumption because they "share the same ultimate objectives as current Defendants."  Plfs.' Opp'n at 7 (quoting *Brackeen v. Zinke*, No. 4:17-cv-00868-O, 2018 WL 10561984, at *3 (N.D. Tex. June 1, 2018)).  That is just as wrong as it sounds.  Even if Proposed Intervenors shared the same ultimate objective as the Agency

Defendants (they do not), that shared objective is *only a reason to apply the presumption*, not a basis for saying that the presumption has not been overcome. If it were otherwise, the ultimate-objective presumption would not be a presumption at all, but a complete bar to intervention.

*Fourth*, the possibility of an administration change poses a threat to Proposed Intervenors' interest in defending the Anti-Racism Rule. The current administration is the first one to create financial incentives for Medicare Part B providers to identify and remedy racial health disparities. Mem. at 18. As in *NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, it is entirely reasonable to infer from the agency's prior contrary views that a new administration may change course. No. 20-50168, 2022 WL 17492273, at *4 (5th Cir. Dec. 7, 2022).; *see also* Am. Comp. ¶¶ 40-42, ECF No. 28 (detailing prior administrations' approach to health equity). By contrast, Agency Defendants' suggestion that this case will be resolved in a year and half is guesswork. This case has been pending for over a year. If this Court denies Plaintiffs' motion for summary judgment, there may be discovery and another round of summary judgment briefing. And even if Plaintiffs' motion is granted, an appeal will likely follow. There is little reason to think, under either scenario, that this case will reach final judgment before January 20, 2025. The possibility of an administration change poses far more than a speculative possibility of inadequate representation.[5]

## II. Permissive Intervention, Not Amici Status, Is the Alternative to Intervention of Right.

The Proposed Intervenors have also established their entitlement to permissive intervention. Their motion to intervene is timely, and their defense of the Anti-Racism Rule will share a common issue of law with Agency Defendants' defense. Mem. at 18-19. Neither party

---

[5] Indeed, a similar challenge to an HHS regulation advancing equity—regarding HHS's 2016 rule implementing Section 1557 of the Affordable Care Act—continued for six years and through three administrations. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022); *Franciscan All., Inc. v. Becerra*, 843 F. App'x 662 (5th Cir. 2021); *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019); *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016).

disputes the latter, Plfs.' Opp'n at 7-12; Defs.' Opp'n at 10, and only Plaintiffs dispute the former. Plfs' Opp'n at 8-10.  Plaintiffs' claims of untimeliness are misguided.

### A.  Proposed Intervenors' motion to intervene is timely.

The State Plaintiffs first argue that too much time has passed since the filing of the complaint.  Plfs.' Opp'n at 8.  But the "timeliness clock does not run from the date the potential intervener knew or reasonably should have known of the existence of the case," but from when the proposed intervenors' interest in the case materialized.  *Glickman*, 256 F.3d at 376-377. Proposed Intervenors' interests did not fully materialize until this Court ruled on the Agency Defendants' motion to dismiss, and the opportunity arose for Proposed Intervenors to defend the Anti-Racism Rule on the merits.  Proposed Intervenors filed their motion to intervene the day that the Agency Defendants filed their answer, striking exactly the right balance between prompt intervention and premature interference.  Mem. at 11.

Given the speed with which Proposed Intervenors filed, the State Plaintiffs' cases actually support a timeliness finding.  Two of them, *Cook Cnty., Ill. v. Texas*, 37 F.4th 1335, 1341-43 (7th Cir. 2022) and *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007), involved non-parties who sought to intervene several months after the defendant indicated it would not defend the case *at all.*  Two others involved non-parties who waited *years* to intervene after learning their interests would not be adequately represented.  *See Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003) (a year and a half); *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974-975 (5th Cir. 2019) (six years).  And one involved a non-party who sought to intervene after a case had already been dismissed.  *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016).  There is no such delay here.

Plaintiffs also argue that they will be prejudiced by Plaintiffs' intervention because it will "multiply the filings and time required by the court to consider this case" and "risk another round

14

of briefing and potential discovery fights." Plfs' Opp'n at 9. This gets the prejudice inquiry backwards. "[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the Intervenor to participate in the litigation." *Espy*, 18 F.3d at 1206; *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977). Moreover, Plaintiffs ignore that Proposed Intervenors' timing actually *reduced* the number of briefs before the Court. If Proposed Intervenors sought to intervene when Plaintiffs filed their complaint, Plaintiffs would have faced four motions to dismiss, not two. *See* Mem. at 11.

More generally, the Plaintiffs cannot show that the mere presence of Proposed Intervenors in the case will cause undue delay. Plfs'. Opp'n at 9. Proposed Intervenors will not propound any additional discovery or seek any extensions beyond what the Agency Defendants request. Thus, even under the State Plaintiffs' spin on the prejudice inquiry, their arguments falter.

**B. None of the parties' discretionary factors counsel against permissive intervention.**

The parties argue that this Court should designate Proposed Intervenors as amici instead of permitting intervention because their interests are duplicative of the Agency Defendants and, thus, adequately represented.[6] *Id.* at 10-12; Defs.' Opp'n at 10-11. But Proposed Intervenors have legally protected interests that are distinct from the Agency Defendants' and may not adequately be represented. *See supra* at 2-13; Mem. at 12-18. This is not a basis for denying Proposed Intervenors' permissive intervention.[7] And for similar reasons, amicus status is not an adequate substitute for intervention here. Amicus status may be appropriate if proposed intervenors "will not add to the relevant factual development of the case" or if "intervention may materially diminish

---

[6] The Agency Defendants also argue that the presence of Proposed Intervenors risks inconvenience and unnecessary delay. As explained above, *supra* at 14-15, that accusation is unsupported.

[7] There are several options, short of denying intervention, to avoid duplicative arguments. This Court could, for example, require Proposed Intervenors to confer with Agency Defendants prior to filing any motions or responsive briefing. This would avoid duplication without compromising Proposed Intervenors' ability to meaningful participate in this case.

the original parties' rights." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 473 (5th Cir. 1984). But these factors are not present here. Neither party disputes that Proposed Intervenors have experience and expertise that may contribute to a full airing of the issues in this case. *See* Plfs.' Opp'n at 11-12; Defs.' Opp'n at 8. And beyond speculation about Proposed Intervenors' effects on this case's timeline, neither party seriously contends that intervention would materially diminish the parties' rights. By contrast, Proposed Intervenors' rights will be severely curtailed if they are relegated to amici status. They will not be able to participate in hearings, enjoy guaranteed access to the administrative record, or have the right to appeal an adverse action. Party status is necessary.

## CONCLUSION

For the foregoing reasons, this Court should grant the Proposed Intervenors' motion to intervene as of right or by permission of the Court.

June 22, 2023

Jon Greenbaum*
Kathryn Youker*
Lawyers' Committee for Civil Rights Under Law
1500 K Street, NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8355
kyouker@lawyerscommittee.org

Respectfully submitted,

*/s/ Robert B. McDuff*
Robert B. McDuff (MS Bar #2532)
Mississippi Center for Justice
210 E Capitol Street, Suite 1800
Jackson, MS 39201
Telephone: (601) 259-8484
rmcduff@mscenterforjustice.org

Jo-Ann Tamila Sagar*
Stanley J. Brown*
Johannah Walker*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
jo-ann.sagar@hoganlovells.com

*Counsel for Intervenors*

* *Pro Hac Vice Application Pending*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 22, 2023, the foregoing document was filed on the Court's CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Robert B. McDuff*