IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

STATE OF MISSISSIPPI, *et al.*                                      PLAINTIFFS

v.                                                    Civil No. 1:22cv113-HSO-RPM

XAVIER BECERRA, *in his official
Capacity as Secretary of Health and
Human Services, et al.*                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER DENYING THE GREENSBORO HEALTH DISPARITIES COLLABORATIVE, NAACP STATE CONFERENCE FOR ALABAMA, NAACP STATE CONFERENCE FOR ARIZONA, NAACP STATE CONFERENCE FOR ARKANSAS, NAACP STATE CONFERENCE FOR KENTUCKY, NAACP STATE CONFERENCE FOR LOUISIANA, NAACP STATE CONFERENCE FOR MISSOURI, NAACP STATE CONFERENCE FOR MISSISSIPPI, AND NAACP STATE CONFERENCE FOR MONTANA'S MOTION [61] TO INTERVENE AS DEFENDANTS, AND GRANTING THE GREENSBORO HEALTH DISPARITIES COLLABORATIVE, NAACP STATE CONFERENCE FOR ALABAMA, NAACP STATE CONFERENCE FOR ARIZONA, NAACP STATE CONFERENCE FOR ARKANSAS, NAACP STATE CONFERENCE FOR KENTUCKY, NAACP STATE CONFERENCE FOR LOUISIANA, NAACP STATE CONFERENCE FOR MISSOURI, NAACP STATE CONFERENCE FOR MISSISSIPPI, AND NAACP STATE CONFERENCE FOR MONTANA LEAVE TO APPEAR AS AMICI CURIAE

BEFORE THE COURT is the Motion [61] of the Greensboro Health

Disparities Collaborative, NAACP State Conference for Alabama, NAACP State

Conference for Arizona, NAACP State Conference for Arkansas, NAACP State

Conference for Kentucky, NAACP State Conference for Louisiana, NAACP State

Conference for Missouri, NAACP State Conference for Mississippi, and NAACP

State Conference for Montana[1] to Intervene as Defendants. The Motion [61] is fully briefed. After due consideration of the Motion [61], the record, and relevant legal authority, the Court finds that the Motion [61] to Intervene as Defendants should be denied, but that the Greensboro Health Disparities Collaborative, NAACP State Conference for Alabama, NAACP State Conference for Arizona, NAACP State Conference for Arkansas, NAACP State Conference for Kentucky, NAACP State Conference for Louisiana, NAACP State Conference for Missouri, NAACP State Conference for Mississippi, and NAACP State Conference for Montana should be granted leave to appear as amici curiae in this litigation.

## I. BACKGROUND

### A.   General background

The underlying dispute in this case concerns a challenge to a portion of a final agency rule promulgated by the Centers for Medicare and Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services ("HHS") which administers the Medicare program. Among other things, the rule in question created a new clinical practice improvement activity for eligible health care professionals titled "Create and Implement an Anti-Racism Plan." *See* Am. Compl. [28] at 2-3, 12-13; Medicare Program, CY 2022 Payment Policies Under

---

[1] For each of the NAACP State Conferences, the Court will use the name as reflected on the docket and in the Motion [61] to Intervene for purposes of the present Motion [61]. *See* Mot. [61] at 1 (referring to these proposed intervenors as "the NAACP State Conferences for Alabama, Arizona, Arkansas, Kentucky, Louisiana, Missouri, Mississippi and Montana"). The Proposed Answer [61-1] for the NAACP State Conferences instead names them as "Mississippi State Conference NAACP, Alabama State Conference NAACP, Arizona State Conference NAACP, Arkansas State Conference NAACP, Kentucky State Conference NAACP, Louisiana State Conference NAACP, Missouri State Conference NAACP, [and] Colorado-Montana-Wyoming ("Rocky Mountain") State Conference NAACP." Proposed Answer [61-1] at 2.

the Physician Fee Schedule and Other Changes, 86 Fed. Reg. 64,996, 65,384, 65,969-70 (Nov. 19, 2021).

Clinical practice improvement activities are one of four categories used by CMS to calculate an eligible health care professional's score under the Merit-based Incentive Payment System ("MIPS"), which determines whether a professional will receive a positive, negative, or neutral adjustment to the Medicare reimbursements she receives for treating Medicare patients. Am. Compl. [28] at 9; 42 U.S.C. §§ 1395w-4(q)(2)(A), (6)(A); *see also* Order [52] at 3-11 (explaining how a professional's MIPS score affects Medicare payments and the role of improvement activities in determining the MIPS score). As part of MIPS, eligible professionals can select from a number of improvement activities to complete in order to obtain points in the clinical practice improvement activities category. 42 U.S.C. § 1395w-4(q)(2)(B)(iii); 42 C.F.R. § 414.1380(b)(3).

To complete the "Create and Implement an Anti-Racism Plan" improvement activity ("Anti-Racism Rule"), an eligible health care professional must "[c]reate and implement an anti-racism plan using the CMS Disparities Impact Statement or other anti-racism planning tools" and conduct "a clinic-wide review of existing tools and policies, such as value statements or clinical practice guidelines, to ensure that they include and are aligned with a commitment to anti-racism and an understanding of race as a political and social construct, not a physiological one." 86 Fed. Reg. at 65,970. The activity "aim[s] to address systemic inequities, including systemic racism," by "support[ing] MIPS eligible clinicians in identifying health

disparities and implementing processes to reduce racism and provide equitable quality health care." *Id.*

Plaintiffs are the States of Mississippi, Alabama, Arkansas, Louisiana, Missouri, and Montana, and the Commonwealth of Kentucky ("Plaintiffs" or "States"), which are challenging CMS's promulgation of the Anti-Racism Rule under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 et seq. Am. Compl. [28] at 3-5, 16-18. [2] Plaintiffs assert that CMS lacks the statutory authority to promulgate the Anti-Racism Rule such that it is ultra vires. *Id.* at 16-18. Specifically, they claim that the Anti-Racism Rule does not satisfy the statutory definition of a "clinical practice improvement activity" because anti-racism plans do not relate to "clinical practice or care delivery," and because CMS did not specify relevant professional organizations or stakeholders who identified such plans as improving clinical practice or care delivery. *Id.* at 17-18 (citing 42 U.S.C. § 1395w-4(q)(2)(C)(v)(III)).

Plaintiffs seek a declaratory judgment, vacatur of the Anti-Racism Rule, and an injunction prohibiting its enforcement. *Id.* at 3, 18. The Amended Complaint [28] names as Defendants Xavier Becerra, in his official capacity as the Secretary of HHS (the "Secretary"), HHS, CMS, Chiquita Brooks-LaSure, in her official capacity as the Administrator of CMS, and the United States of America (collectively "Defendants"). *Id.* at 5-6.

---

[2] Page citations to the parties' filings refer to the electronic page number assigned by the Court's electronic filing system, CM/ECF.

B.    Procedural history

On May 5, 2022, Plaintiffs filed a Complaint [1] in this Court, challenging CMS's promulgation of the Anti-Racism Rule under the APA. Compl. [1] at 14-24. After Defendants first moved to dismiss for lack of subject-matter jurisdiction, Mot. [15], Plaintiffs amended their Complaint [1], *see* Am. Compl. [28].[3] Defendants filed a renewed Motion [36] to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on September 23, 2022. Like the first Motion [15], Defendants argued that this Court lacked subject-matter jurisdiction, contending that Plaintiffs lack standing to challenge the Anti-Racism Rule, and that Congress has statutorily precluded judicial review of Plaintiffs' claims in 42 U.S.C. § 1395w-4(q)(13)(B). Mem. [37] at 19, 29.

On March 28, 2023, this Court entered an Order [52] which granted in part and denied in part Defendants' Motion [36] to Dismiss. On the issue of standing, the Court found that the States had sufficiently alleged standing, Order [52] at 32-41, but that Dr. Amber Colville lacked standing to sue because she had not shown an injury-in-fact and dismissed her claims without prejudice, *id.* at 23-29, 48.

As for the statutory bar on judicial review, the Court determined that "§ 1395w-4(q)(13)(B)(iii) prohibits judicial review of the identification of a clinical practice improvement activity, which is 'an activity that relevant eligible professional organizations and other relevant stakeholders identify as improving

---

[3] The original Complaint [1] and Amended Complaint [28] included two additional Plaintiffs, Dr. Amber Colville and the State of Arizona. *See* Compl. [1] at 4-5; Am. Compl. [28] at 3-5. The State of Arizona voluntarily dismissed its claims on April 28, 2023. Not. [58].

clinical practice or care delivery and that the Secretary determines, when effectively executed, is likely to result in improved outcomes.'" *Id.* at 43-44 (citing 42 U.S.C. §§ 1395w-4(q)(2)(B), (C)(v)(III), (13)(B)(iii)). However, § 1395w-4(q)(13)(B)(iii) does not preclude judicial review of whether the promulgated activity falls within the statutory definition of a "clinical practice improvement activity." *Id.* at 44. The Court found that it has jurisdiction to review whether the Anti-Racism Rule satisfies the definition set forth in § 1395w-4(q)(2)(C)(v)(III), and that Plaintiffs had plausibly alleged that it did not. *Id.* at 45-47.

Following entry of the Court's Order [52], Defendants filed their Answer [59] on May 11, 2023. Plaintiffs have filed a Motion [78] for Summary Judgment, and any response from Defendants is due on or before July 26, 2023. *See* Text Only Order, June 22, 2023.

C.    The present Motion [61]

Over a year after the original Complaint [1] was filed and on the same day Defendants filed their Answer [59], the present Motion [61] to Intervene as Defendants was filed by the NAACP State Conference for Alabama, NAACP State Conference for Arizona, NAACP State Conference for Arkansas, NAACP State Conference for Kentucky, NAACP State Conference for Louisiana, NAACP State Conference for Missouri, NAACP State Conference for Mississippi, NAACP State Conference for Montana (collectively "NAACP State Conferences") and the Greensboro Health Disparities Collaborative ("Collaborative"). The NAACP State Conferences and the Collaborative (collectively "Proposed Intervenors") seek to

6

intervene in this litigation to defend the Anti-Racism Rule as a proper exercise of CMS's authority. Mot. [61] at 1; Mem. [62] at 16, 25. Along with the Motion [61], the NAACP State Conferences have filed a Proposed Answer [61-1].[4]

Proposed Intervenors argue that they are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) because they have timely sought to intervene to protect their interests in the Anti-Racism Rule and Defendants may not adequately represent those interests. Mem. [62] at 15-24. In the alternative, Proposed Intervenors contend that they qualify for permissive intervention. *Id.* at 24-25.

To demonstrate their right to intervene in this case, the NAACP State Conferences argue that they have members who are the intended beneficiaries of the Anti-Racism Rule. *Id.* at 18-19. Specifically, they contend that the Anti-Racism Rule aims to reduce racial health disparities and racism in health care which directly benefits their members, who are Black Medicare recipients. *Id.* at 18. In addition, the NAACP State Conferences and the Collaborative state that they "have an interest in avoiding financial burdens that would interfere with their programming," citing various partnerships with hospitals and health care professionals. *Id.* at 20.

Regarding adequacy of representation, Proposed Intervenors contend that Defendants' Motions [15][36] to Dismiss for lack of subject-matter jurisdiction demonstrate a "preference for a resolution on procedural grounds [which] is

---

[4] The Proposed Answer [61-1] itself does not mention the Collaborative. *See generally* Proposed Answer [61-1].

incompatible with Proposed Intervenors' interests, which require an unqualified rejection of the theory underlying Plaintiffs' claims," that the Anti-Racism Rule promotes discrimination. *Id.* at 21. Even if Defendants will defend the merits, Proposed Intervenors argue that they have specific expertise that makes them better equipped to address Plaintiffs' theory of standing and how the Anti-Racism Rule will reduce racial disparities in health care treatment and improve the quality of care for all individuals. *Id.* at 22-23. Proposed Intervenors also argue that Defendants will not adequately protect their interests in their partnerships. *Id.* at 23. Finally, they contend that a possible change in the presidential administration during the pendency of this case may lead to Defendants no longer defending the rule. *Id.* at 24.

Plaintiffs and Defendants have each filed Responses [75][76] opposing intervention. They argue that Proposed Intervenors have failed to demonstrate inadequate representation of their interests by Defendants as necessary to qualify for intervention as of right because two presumptions in favor of adequate representation apply, and neither has been rebutted. Resp. [75] at 5-10; Mem. [77] at 3-7. They maintain that permissive intervention should be denied because adding Proposed Intervenors as parties would complicate the litigation with little added benefit. Resp. [75] at 10-11; Mem. [77] at 10-12. Plaintiffs also argue that the Motion [61] is untimely. Mem. [77] at 2, 8-9. Rather than permitting intervention, Plaintiffs and Defendants suggest that the Proposed Intervenors should instead be granted leave to participate as amici. Resp. [75] at 8, 11; Mem. [77] at 3, 12.

8

In their Reply [81], Proposed Intervenors assert that neither of the two presumptions of adequacy apply, Reply [81] at 7-13, and that even if they did, they are rebutted by differences in Defendants' and Proposed Intervenors' litigation strategies, *id.* at 13-16. They also argue that Defendants may narrowly construe the Anti-Racism Rule in light of Plaintiffs' challenge while "Proposed Intervenors have an interest in casting the Anti-Racism Rule broadly enough to promote the health of the thousands of NAACP Conference members who are in the Medicare program and further the Collaborative's partnerships." *Id.* at 17. Finally, they contend that permissive intervention, not amici status, is proper if the Court finds that the requirements for intervention as of right are not met because amici status will not permit them to appeal or participate in hearings. *Id.* at 18-21.

## II. <u>DISCUSSION</u>

### A.  <u>Intervention as of right</u>

Proposed Intervenors assert that they are entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). Rule 24(a)(2) provides that, on timely motion, the Court must allow intervention by anyone who

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In the Fifth Circuit, a proposed intervenor must satisfy a four-part test to qualify for intervention as of right: (1) the motion must be timely; (2) the movant must have a "direct, substantial, legally protectable interest in the proceedings"; (3) there is a possibility that the legally protectable interest may be

9

impaired or impeded by the litigation if intervention is denied; and (4) the movant's interest may be inadequately represented by the existing parties. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305-08 (5th Cir. 2022) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)). Although "Rule 24 is to be liberally construed," Proposed Intervenors carry the burden to prove they satisfy each element. *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 544 (5th Cir. 2022) (quoting *Brumfield v. Dodd*, 759 F.3d 339, 341 (5th Cir. 2014)). In resolving the Motion [61], the Court accepts Proposed Intervenors' factual allegations as true. *Id.*

Even assuming that Proposed Intervenors have carried their burden as to the first three factors,[5] the Court finds that they have not shown that their interests may be inadequately represented by Defendants. Proposed Intervenors have a "minimal" burden to show that "the existing representation may be inadequate" and need not demonstrate certainty that Defendants' representation will be inadequate. *Guenther*, 50 F.4th at 543 (emphasis and quotation removed). Nevertheless, in two

---

[5] Neither Plaintiffs nor Defendants contest for purposes of the present Motion [61] that Proposed Intervenors have carried their burden as to the second and third elements, Resp. [75] at 5; *see generally* Mem. [77], and Defendants further agree with Proposed Intervenors on the first element, that the Motion [61] is timely, Resp. [75] at 5. The Court questions whether the Collaborative's interest in limiting the financial resources it must spend to encourage hospitals and other health care providers to conduct research and anti-racism trainings is a "direct, substantial, legally protectable interest" in this challenge to the Anti-Racism Rule. *See Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015) (noting that "ideological, economic, or precedential reasons" are insufficient for intervention under Rule 24(a)(2)); *Defense Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, 2018 WL 3614221, at *3 (W.D. Tex. July 27, 2018) (finding that the movants' claim that they "will be forced to expend additional resources to protect their respective missions" was "too generalized to establish their entitlement to intervention by right"); *cf. La Union del Pueblo Entero*, 29 F.4th at 306 (finding a sufficient interest where movants would have to expend additional resources to train poll watchers because the law at issue "change[d] the legal landscape for what it takes to carry out that duty"). But the Court need not resolve this question in light of its finding that Proposed Intervenors do not satisfy the fourth element.

circumstances, a presumption in favor of adequacy applies. *Id.* First, in cases involving matters of sovereign interest, if an existing party is a governmental body which represents the intervenor's interest, adequacy is presumed, and the movant must show that its interest is in fact different from and will not be represented by the governmental party. *La Union del Pueblo Entero*, 29 F.4th at 308; *Edwards*, 78 F.3d at 1005. Second, when the movant and an existing party have "the same ultimate objective," the movant must show "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Texas v. United States*, 805 F.3d 653, 661-62 (5th Cir. 2015). Plaintiffs and Defendants argue that both presumptions are applicable here, Resp. [75] at 5-6, 10 n.2; Mem. [77] at 3-5, while Proposed Intervenors assert that neither are, Reply [81] at 8-12.

Even if the Court were to assume that the governmental-representative presumption does not apply here,[6] the same ultimate objective presumption clearly does. *See Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 (5th Cir. Mar. 22,

---

[6] Proposed Intervenors argue that this presumption is inapplicable for government agencies, and therefore should not apply unless a sovereign itself is a party. Reply [81] at 8-10 (citing *Entergy Gulf States of La., L.L.C. v. EPA*, 817 F.3d 198, 203 & n.2 (5th Cir. 2016)). While the Fifth Circuit has repeatedly declined to apply the government-representative presumption in cases involving agencies, in those cases the agency was not asserting a sovereign interest. *See Entergy*, 817 F.3d at 201-02, 203 n.2 (not applying the presumption in a Freedom of Information Act ("FOIA") case where the intervenor sought to prevent the agency from turning over information pertaining to it); *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 n.4 (5th Cir. Mar. 22, 2022) ("This case is more like *Entergy*; it involves assistance with loans by a governmental agency, not a sovereign interest."); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 373-75 (5th Cir. 2001) (not discussing the presumption in a reverse-FOIA case where intervenors wanted the defendant agency to be able to disclose the plaintiff's information); *see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 n.7 ("[T]he government-representative presumption does not *inherently* apply whenever a state or federal agency is a party." (emphasis added)). Even if Proposed Intervenors are correct that governmental agencies categorically fall outside of the presumption, here the United States itself is a party to this case and is defending the Anti-Racism Rule and its sovereign interests in its citizens' health, well-being, and protection from discrimination. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).

2022). Both Proposed Intervenors and Defendants seek to uphold the Anti-Racism Rule as a clinical practice improvement activity, and, as the Court explained in its previous Order [52], its subject-matter jurisdiction in this litigation is limited to the question of "whether the Anti-Racism Rule satisfies the definition of a 'clinical practice improvement activity' as set forth in § 1395w-4(q)(2)(C)(v)(III)." Order [52] at 45. Proposed Intervenors and Defendants share the goal of having the Court answer the question in the affirmative. Accordingly, the same ultimate objective presumption applies. *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 579 (5th Cir. 2007) ("Even assuming that the State's interest is broader than that of the Levee Board, the more narrow issue regarding execution of the judgment against the Levee Board is the only matter currently before us. Thus, the Levee Board and the State have the same ultimate objective in this case."); *Miller*, 2022 WL 851782, at *3 ("Undoubtedly, the Secretary and the Federation share the 'same ultimate objective'—upholding the constitutionality of § 1005.").

Proposed Intervenors' attempts to rebut the presumption of adequate representation by demonstrating the existence of interests adverse with Defendants fall short. "In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Guenther*, 50 F.4th at 543 (quoting *Texas*, 8005 F.3d at 662). Proposed Intervenors have not shown that they will make contrasting legal arguments from Defendants, and they primarily take issue with Defendants' choices

at the motion to dismiss stage and claim that the agency may not rely on certain potential statements in the administrative record. Reply [81] at 16-17.  Typically, such disagreements in litigation strategy are insufficient to show adverse interests. *Guenther*, 50 F.4th at 543 (collecting cases).

Proposed Intervenors principally focus on Defendants' Motions [15][36] to Dismiss, which argued that the Court lacked subject-matter jurisdiction. Mem. [62] at 21-22. According to Proposed Intervenors, only a decision upholding the Anti-Racism Rule on its merits will protect their interests, so Defendants' attempts to seek dismissal on procedural grounds demonstrate adversity. *Id.*; Reply [81] at 13-15. In support of this argument, Proposed Intervenors cite *La Union del Pueblo Entero*, where the Fifth Circuit found inadequate representation where the representative defendants had sought dismissal based on sovereign immunity. *See* 29 F.4th at 308-09. There, the Fifth Circuit noted that, if those defendants had succeeded in their dismissal motions, the case would have proceeded with other defendants who were not entitled to immunity and who had "said that they w[ould] not substantively defend the constitutionality of the law in th[e] lawsuit." *Id.* Here, Defendants' procedural arguments would have ended the litigation and effectively preserved the Anti-Racism Rule absent some future challenge in a separate proceeding.

Additionally, Defendants' procedural grounds for dismissal argued that the Court lacked subject-matter jurisdiction over the present litigation. *See* Mot. [15]; Mot. [36]. While Proposed Intervenors state their interests would not be adequately

protected by a jurisdictional decision in favor of Defendants, any asserted interest in a decision on the merits where the Court lacks jurisdiction cannot provide grounds to intervene. A "lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties." *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934); *see also SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 464 n.4 (5th Cir. 2010). Had the Court agreed with Defendants, or if it subsequently determines that subject-matter jurisdiction no longer exists, the Court would lack the power to determine the merits of the challenge to the Anti-Racism Rule. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon the meaning or constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."); *see also id.* at 109-10 (noting that the merits question could not be resolved where the plaintiff lacked standing). While Proposed Intervenors may prefer a ruling on the merits, they cannot rely on Defendants' jurisdictional challenges to demonstrate that their interests are adverse.

Further, nothing in the record suggests that Defendants will not vigorously defend the Anti-Racism Rule on the merits. To the contrary, Defendants have stated that they intend to defend the merits. Resp. [75] at 7. Their strategic choice to initially focus on certain aspects of their jurisdictional challenges does not mean that other arguments will not be raised going forward. *See Guenther*, 50 F.4th at 544 (finding no adversity of interest despite certain omitted theories in the complaint because they could be asserted later). Proposed Intervenors "cannot

14

demonstrate how [Defendants'] chosen defense strategy is uniquely favorable to their own interests" in preserving the Anti-Racism Rule "while placing those of [Proposed Intervenors] in jeopardy," *id.* at 547, and their other cited interests, Reply [81] at 17, are simply not germane to the sole question before the Court, *see Texas*, 805 F.3d at 662 (noting that adversity of interests can only be shown by divergence of interests "in a manner germane to the case").

Proposed Intervenors also argue that there could be a change in presidential administration during the pendency of the case, and that a new administration may not defend the Anti-Racism Rule. Reply [81] at 18. This is entirely speculative at this juncture, especially since Plaintiffs' Motion [78] for Summary Judgment is already pending, and any change in administration would not occur until January 20, 2025, at the earliest. It is far from clear that a new administration would refuse to defend the Anti-Racism Rule, and the mere chance that these events could occur is insufficient to rebut the presumption of adequate representation. *See League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (noting that an intervenor "must produce something more than speculation as to the purported inadequacy" (quotation omitted)).

In sum, Proposed Intervenors have not rebutted the presumption that Defendants adequately represent their interests in defending the Anti-Racism Rule. Their request to intervene as of right should be denied.

B.     Permissive intervention

Alternatively, Proposed Intervenors argue that permissive intervention should be granted. Under Rule 24(b)(1), a court may allow intervention by someone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Although Proposed Intervenors satisfy this requirement, that does not end the inquiry. "Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Bush v. Viterna*, 740 F.3d 350, 359 (5th Cir. 1984). The Court finds that permissive intervention should be denied.

"When acting on a request for permissive intervention, a district court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *League of United Latin Am. Citizens*, 884 F.2d at 189. As the Court has already explained, Proposed Intervenors are adequately represented by Defendants in the litigation. Additionally, given the narrow scope of the question before the Court and further given that this case is a review of administrative agency rulemaking based upon an administrative record, Proposed Intervenors cannot significantly contribute to the development of any additional factual issues outside the administrative record. The Court "must judge the propriety of [the Anti-Racism Rule] solely by the grounds invoked by the agency" at the time the Rule was promulgated. *Calcutt v. FDIC*, 143 S. Ct. 1317,

16

1318 (2023) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Accordingly,

Proposed Intervenors' "experience with and expertise in discrimination and racial

health disparities," Mem. [62] at 25, cannot add any new facts in this case, *see*

*Calcutt*, 143 S. Ct. at 1318, 1320-21. Likewise, adding Proposed Intervenors as

parties may unnecessarily complicate or delay the case by multiplying motions and

possible discovery. For these reasons, the Court finds that permissive intervention

should be denied.

C.      Amicus status

When a potential intervenor is adequately represented by an existing party

and will not present any new legal issue, "a third party can contribute usually most

effectively and always most expeditiously by a brief amicus curiae and not by

intervention." *Bush*, 740 F.2d at 359 (quotation omitted). The Court has the

inherent authority to permit Proposed Intervenors to participate as amici curiae,

and there are no specific prerequisites that must be satisfied to qualify for amicus

status. *United States v. Davis*, 180 F. Supp. 2d 797, 800 (E.D. La. 2001). While no

rule specifically governs amicus status in district court proceedings, courts typically

apply Rule 29 of the Federal Rules of Appellate Procedure. *See, e.g.*, *Rowland v.*

*GGNSC Ripley, LLC*, No. 3:13-CV-11-DMB-SAA, 2016 WL 4136486, at *4 (N.D.

Miss. Aug. 3, 2016); *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F.

Supp. 2d 920, 927 (S.D. Tex. 2007). Amicus status may be granted sua sponte,

*Rowland*, 2016 WL 4136486, at *4, and the Court has broad discretion to determine

the scope of an amicus's participation in the case, *see Morales v. Turman*, 820 F.2d 728, 730 (5th Cir. 1987).

Accordingly, the Court will permit Proposed Intervenors to participate as amici curiae in this case. Proposed Intervenors claim to have an interest in the proceeding and state that they can present some insight that the parties may not. *See generally* Mem. [62]; Reply [81]. Plaintiffs and Defendants do not oppose amicus status. Resp. [75] at 8, 11; Mem. [77] at 3, 12. As amici, Proposed Intervenors can present their arguments and explain why the Anti-Racism Rule is a proper exercise of CMS's statutory authority. In accordance with Federal Rule of Appellate Procedure 29, Proposed Intervenors should file any amicus brief in response to Plaintiffs' pending Motion [78] for Summary Judgment no later than seven days after Defendants file their response to the Motion [78], and, if Defendants file a separate motion for summary judgment, any amicus brief shall be due no later than seven days after such filing. *See* Fed. R. App. P. 29(a)(6). The brief itself must comply with the requirements for memorandum briefs set forth in this Court's Local Rules.

### III. <u>CONCLUSION</u>

To the extent the Court has not specifically addressed any of the parties' or movants' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [61] of the Greensboro Health Disparities Collaborative, NAACP State Conference for

Alabama, NAACP State Conference for Arizona, NAACP State Conference for Arkansas, NAACP State Conference for Kentucky, NAACP State Conference for Louisiana, NAACP State Conference for Missouri, NAACP State Conference for Mississippi, and NAACP State Conference for Montana to Intervene as Defendants is **DENIED**.

   **IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Greensboro Health Disparities Collaborative, NAACP State Conference for Alabama, NAACP State Conference for Arizona, NAACP State Conference for Arkansas, NAACP State Conference for Kentucky, NAACP State Conference for Louisiana, NAACP State Conference for Missouri, NAACP State Conference for Mississippi, and NAACP State Conference for Montana are **GRANTED** leave to appear as amici curiae.

   **SO ORDERED AND ADJUDGED**, this the 12th day of July, 2023.

                         *s/ Halil Suleyman Ozerden*
                         HALIL SULEYMAN OZERDEN
                         UNITED STATES DISTRICT JUDGE