# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF ARKANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSOURI; and STATE OF MONTANA, | Case No. 1:22-cv-113-HSO-RPM |
| *Plaintiffs*, | |
| v. | |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; THE UNITED STATES OF AMERICA, | |
| *Defendants*. | |

## AMENDED OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Below are Plaintiffs' objections and responses to Defendants' first set of ROGs.

Plaintiffs' ability to respond to these requests is limited by the fact that they have not

yet received responses to their subpoenas to third-party providers or their second batch

of discovery to Defendants. Plaintiffs thus reserve the right to update this document

once they receive that information.

1.      **Discussing each State individually, describe in detail how state laws in the Plaintiff States prohibit racial discrimination in the provision of health care, including by identifying all court decisions and other authorities that support your assertion that these laws apply to the provision of health care.**

**Objections**: Plaintiffs object to providing "all" authorities as not proportional. The only arguably relevant question is whether the States prohibit racial discrimination in healthcare, which can be shown with examples and without a burdensome search for "all" authorities. Defendants can research and access publicly available statutes, regulations, caselaw, and other authorities themselves. Plaintiffs have already provided citations in this litigation, and they reproduce sufficient exemplary authorities below.

**Response**: In Alabama, Ala. Code § 34-24-360(2) provides: "The Medical Licensure Commission shall have the power and duty to suspend, revoke, or restrict any license to practice medicine or osteopathy in the State of Alabama or place on probation or fine any licensee whenever the licensee shall be found guilty on the basis of substantial evidence of any of the following acts or offenses: …  Unprofessional conduct as defined herein or in the rules and regulations promulgated by the commission." The Commission, in turn, has defined "unprofessional conduct" to "mean the Commission or omission of any act that is detrimental or harmful to the patient of the physician or detrimental or harmful to the health, safety, and welfare of the public, and which violates the high standards of honesty, diligence, prudence and ethical integrity demanded from physicians and osteopaths licensed to practice in the State of Alabama." Ala. Admin. Code 545-X-4-.06. The Commission provides examples

of unprofessional conduct, including: "Conduct which is immoral and which is willful, shameful, and which shows a moral indifference to the standards and opinions of the community." *Id.* 545-X-4-.06(9). It would be unethical and thus unprofessional conduct for a physician to discriminate against a patient based on his or her race. Other regulations likewise prohibit certain racially discriminatory practices related to healthcare. *E.g.*, Ala. Admin. Code 420-5-4-.03(2)(d) (assisted living facilities); *id.* 420-5-20-.03(2)(d) (specialty care assisted living facilities); *id.* 420-5-10-.03(4) (nursing facilities). And Alabama public hospitals and health institutions ban discrimination based on race. *See, e.g.*, Taylor Hardin Secure Medical Facility, Dep't of Mental Health, perma.cc/22VE-PFBY; UAB Medicine, perma.cc/RXV8-Y4RE; Huntsville Hospital, https://www.huntsvillehospital.org/disclaimer#:~:text=Huntsville%20Hospital%20 Health%20System%20complies,expression%20or%20source%20of%20payment.

Arkansas law prohibits racial discrimination in the provision of health care. *See* Ark. Code Ann. §16-123-101 *et seq.* In Arkansas, a place of public accommodation is "any place … or other establishment, either licensed or unlicensed, that supplies accommodations, goods, or services to the general public, or that solicits or accepts the patronage or trade of the general public, or that is supported directly or indirectly by government funds." *Id.* §16-123-102(11). Arkansas protects as "a civil right" the right "to be free from discrimination because of race," and includes "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public … accommodation." *Id.* §16-123-107(a). Arkansas recognizes a cause of

action for intentional violations of that right "to recover compensatory and punitive damages" and "to enjoin further violations." *Id.* §16-123-107(b). Additionally, the Arkansas Department of Health Division of Health Protection - Infectious Disease Branch has contracts with providers. Public health service agreements contain this language:

> B. COMPLIANCE WITH NONDISCRIMINATION LAWS: The Provider will comply with all applicable provisions of the following federal regulations related to nondiscrimination, both in service delivery to clients and in employment, including, but not limited to, the following:
>
> - Title 45 Code of Federal Regulations: Part 80 (Nondiscrimination on the Basis of Race or Sex) Part 84 (Nondiscrimination on the Basis of Handicap) Part 90 (Nondiscrimination on the Basis of Age)
> - Americans with Disabilities Act of 1990, U.S.C. Section 12101 et. seq.
> - Title 28 Code of Federal Regulations: Part 35 (Nondiscrimination on the Basis of Disability in State and Local Government Services)
> - Title 41 Code of Federal Regulations: Part 60-741 (OFCCP: Affirmative Action Regulations on Handicapped Workers) The Department will furnish a copy of these regulations to the Provider upon request.

Kentucky law prohibits racial discrimination in the provision of health care. *See* Ky. Rev. Stat. Ann. §344.010 *et seq.* Kentucky law seeks to "provide for execution within the state of the policies embodied in" federal civil rights statutes, including "the Federal Civil Rights Act of 1964," and "[t]o safeguard all individuals within the state from discrimination because of … race." *Id.* §344.020(a), (b). Places of public accommodation generally include "any place … or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits

or accepts the patronage or trade of the general public or which is supported directly or indirectly by government funds." *Id.* §344.130. Kentucky bans denying "an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation … on the ground of … race." *Id.* §344.120. It also bans certain racially discriminatory printed materials. *Id.* §344.140. Civil-rights protections extend to, for example, "clinics." *Lexington Fayette Urb. Cnty. Hum. Rts. Comm'n v. Hands on Originals, Inc.*, 2017 WL 2211381, at \*5 (Ky. Ct. App.), *aff'd* 592 S.W.3d 291 (Ky. 2019). Regulations also prohibit racial discrimination in the provision of health care. *See* 907 Ky. Admin. Regs. 1:671 §1(40)(l) ("'Unacceptable practice' means conduct by a provider" that can include "[d]iscriminating in the furnishing of medical care, services, or supplies"); *id.* §6(3) ("A provider's participation may be terminated and a period of exclusion imposed, if an administrative determination is made … that the provider engaged in an unacceptable practice."); *id.* 1:672 §2(6)(i)–(k) (prohibiting "unacceptable practice" and requiring compliance with federal and state law); *id.* §2(7)(a)(8) (denying enrollment to providers that engage in unacceptable practices).; *id.* §5(12) (unacceptable practices include "[d]iscriminating in the furnishing of medical care, services, or supplies").

Louisiana law prohibits racial discrimination in the provision of health care. *See* La. Stat. Ann. §51:2231 *et seq.* The Louisiana Commission on Human Rights was established "to safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, disability, or national origin in connection with

employment and in connection with public accommodations." *Id.* §51:2231(A). A place of public accommodation includes "any place … or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or accepts the patronage or trade of the general public, or which is supported directly or indirectly by government funds." *Id.* §2232(10). Discriminatory practices include "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race." *Id.* §2232(5). Louisiana bans denying "an individual the full and equal enjoyment of the goods, services, privileges, advantages, and accommodations of a place of public accommodation … on the grounds of race." *Id.* §2247. Louisiana also bans certain racially discriminatory printed materials. *Id.* §2248. The Commission has an online portal for citizens to file complaints of discrimination.  *See Filing a Complaint with LCHR*, Office of Gov'r Landry, gov.louisiana.gov/page/filing-a-complaint-with-lchr. The Louisiana State Board of Medical Examiners also investigates complaints against healthcare providers and physicians. *See* La. R.S. § 37:1270. The Board has an online portal for citizens to file complaints. *See File a Complaint/Investigations*, La. State Bd. of Med. Examiners, lsbme.la.gov/content/investigations.

Mississippi regulations prohibit certain racially discriminatory practices related to healthcare. *See* 15 Code Miss. R. Pt. 16, Subpt. 1, Ch. 4, R. 4.15.5 (licensed rehabilitation facility cannot deprive clients "of civil or legal rights" or subject them "to discrimination

on the basis of race"); *id.* Ch. 46, R. 46.31.1(8) ("No person shall be refused service because of … race" in home health agencies); *id.* Ch. 1, R. 1.19.9(3) ("The hospice shall insure that the patient has the right to … [r]eceive appropriate and compassionate care, regardless of … race"); *id.* Ch. 40, R. 40.21.2(1) ("The [psychiatric hospital] shall have written policies and procedures that describe the rights of patients," including the "impartial access to treatment, regardless of race."); *id.* Ch. 51, R. 51.29.2(1) ("The [psychiatric treatment] facility shall have written policies and procedures that describe the rights of patients and the means by which these rights are protected and exercised. These rights shall include … impartial access to treatment, regardless of race."); *id.* Pt. 19, Subpt. 60, Ch. 10, R.10.8.1(9) (providing for "disciplinary sanctions" against certain licensees for "[m]aking differential, detrimental treatment against any person because of race"); *id.* Ch. 8, R. 8.8.1(9) (similar); 24 Code Miss. R. Pt. 3, R. 1.8(A) ("The Department of Mental Health promotes nondiscriminatory practices and procedures in all phases of state service administration, as well as in programs funded and/or certified/operated by the Department of Mental Health."); *id.* Pt. 2, R. 10.7(B)(1) ("All agency providers must have policies that include/address … [n]on-discrimination based on … race."); *id.* R. 16.2(A) ("Written policies and procedures must address admission to services and must at a minimum … [a]ssure equal access to treatment and services and non-discrimination based on … race."); *id.* Pt. 3, Ch. 18, R. 18.14(D), (G) ("DMH-credentialed individuals do not discriminate against any individual because of race" and "work to eliminate the effect of bias on any service provision, and they do not

7

knowingly participate in or condone discriminatory practices."). In addition, Mississippi state hospitals do not allow discrimination based on race. *See, e.g.*, *Discrimination is Against the Law*, Miss. State Hospital, perma.cc/WWM6-Q9NT.

Missouri law prohibits racial discrimination in the provision of health care. *See, e.g.*, Mo. Ann. Stat. §213.010 *et seq*. In Missouri, places of public accommodation include "all places or businesses offering or holding out to the general public, goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public." *Id.* §213.010(16). Missouri protects the "free and equal use and enjoyment … of any place of public accommodation … without discrimination or segregation because of race." *Id.* §213.065(1). "It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation … or to segregate or discriminate against any such person in the use thereof because of race." *Id.* §213.065(2); *see also* Mo. Code Regs. Ann. tit. 19, §10-2.010 (civil rights compliance requirements for health service providers).

Montana law prohibits racial discrimination in the provision of health care. *See* Mont. Code Ann.§53-6-105 (Medicaid) ("No discrimination shall be practiced or asserted against any applicant for or recipient of care and services … on the basis of race … and the furnishing of care under this part to any applicant or recipient thereof

8

shall not be delayed or denied on the basis of race."); *id.* §50-5-105 ("All phases of the operation of a health care facility must be without discrimination against anyone on the basis of race."); *id.* §49-2-101, *et seq.*; *id.* 49-3-101, *et seq.* Montana protects as "a civil right" the "right to be free from discrimination because of race." *Id.* §49-1-102(1). Places of public accommodation are any "place that caters or offers its services, goods, or facilities to the general public subject only to the conditions and limitations established by law and applicable to all persons," including "hospital[s]." *Id.* §49-2-101(20)(a). Montana makes it unlawful "to refuse, withhold from, or deny to a person any … services, goods, facilities, advantages, or privileges because of … race." *Id.* §49-2-304(1)(a). Montana also bans certain racially discriminatory printed materials. *Id.* §49-2-304(1)(b). Willfully engaging in "an unlawful discriminatory practice" is a crime. *Id.* §49-2-601. A person who believes that he or she has been discriminated against based on race can file a complaint with the Department of Labor and Industry's Human Rights Bureau. *Id.* §49-2-504. Moreover, if a healthcare provider or supplier of healthcare services is considered a state or local government entity, including an instrumentality of a state or local government entity, it is unlawful to discriminate based on race in the performance of services. *Id.* §49-3-205. Montana may not consider race in the distribution of governmental funds. *Id.* §49-3-206. And every state or local contract for goods or services "must contain a provision that … there may not be discrimination on the basis of race … by the persons performing the contract." *Id.* §49-3-207; *see also id.* §49-3-205 ("nor may a state or local governmental agency become a

party to an agreement, arrangement, or plan that has the effect of sanctioning discriminatory practices").

Montana's Department of Public Health and Human Services uses contract templates that contain specific anti-discrimination provisions. For example, the current template for general agreements/agreements outside the Medicaid context contains the following provision:

> Civil Rights.  The Contractor may not discriminate in any manner against any person on the basis of race, color, national origin, age, physical or mental disability, marital status, religion, creed, sex, sexual orientation, political beliefs, genetic information, veteran's status, culture, social origin or condition, ancestry, or an individual's association with individuals in any of the previously mentioned protected classes in the performance of this Contract or in the delivery of Montana State services or funding on behalf of the State of Montana.

The Department administers Montana's medical assistance programs, and requires health care providers that participate in such programs to execute a provider enrollment agreement.  The Montana Healthcare Programs Provider Enrollment Agreement also contains specific anti-discrimination provision:  "The Provider may not, on the grounds of race, color, national origin, creed, sex, religion, political ideas, marital status, age, or disability exclude persons from employment in, deny participation in, deny benefits to, or otherwise subject persons to discrimination under the Medicaid program and/or any activity connected with the provision of Medicaid services."  The provider enrollment agreements for Healthy Montana Kids/CHIP program (e.g., HMK/CHIP Dental Provider Agreement and Signature Page, CHIP Provider

Agreement and Signature for Extended Mental Health Benefits for Children with a Serious Emotional Disturbance (SED)) contain substantially the same anti-discrimination provisions.  Another example is Montana's Passport to Health, the basic care management program for Montana Medicaid and Healthy Montana Kids Plus (HMK+) members.  The Passport Provider Agreement includes the following provision: "Must not discriminate against members enrolled on the basis of race … and will not use any policy or practice that has the effect of discriminating on the basis of race. . . . " Other contracts for the provision of certain services to the Medicaid Program or to Medicaid or HMK‑CHIP beneficiaries also contain this provision or the civil rights provision from the Department's general contract template.

Until mid-2024, the Department's Developmental Disabilities Program (DDP) entered into contracts with providers for the provision of services to persons with developmental disabilities served by DDP.  These contracts were based on the general/non-Medicaid contract template referenced above and contained that Civil Rights provision.  On September 20, 2024, the Department published a rule by which it adopted the Developmental Disabilities Program 0208 Comprehensive Waiver Provider Manual (DDP Provider Manual), effective as of July 1, 2024.  The DDP Provider Manual requires DDP providers to enroll as a Montana Medicaid provider, pursuant to the Montana Healthcare Programs Provider Enrollment Agreement referenced above.

**2.    Discussing each State individually, describe in detail all complaints or charges of racial discrimination against health care providers received under state laws that prohibit racial discrimination in the provision of health care since May 1, 2012, whether in administrative or court proceedings, and describe in detail how each complaint or charge was resolved.**

**Objections**: Plaintiffs object to providing information going back to 2012—ten years before this case was filed, ten years before the challenged rule was promulgated, and across multiple administrations with significant personnel turnover—as not proportional. Plaintiffs object to providing and describing "in detail" "all" complaints or charges as not proportional. Additionally, complaints, charges, and resolutions involve confidential information that cannot be publicly disclosed, as explained below.

**Response**: The Louisiana State Board of Medical Examiners investigates complaints regarding physicians. *See* La. Stat. Ann. §37:1270. The Board has had several cases opened with allegations of physician race-based discrimination in recent years. At least one case is ongoing and active. All details of these cases are confidential and nonpublic but show that the Board actively investigates complaints and charges of racial discrimination against healthcare providers. Under applicable regulations, "failure to provide professional service to a person because of such person's race, creed, color or national origin" is an aggravating circumstance which may be considered in determining whether a complaint disposition is disciplinary (public) or non-disciplinary (non-public). 46 La. Admin. Code Pt. XLV, §9714.

According to Missouri law, "[a]ll … complaints, investigatory reports, and information pertaining to any person who is an applicant or licensee of any agency

assigned to the division of professional registration by statute or by the department are confidential and may not be disclosed to the public or any member of the public, except with the written consent of the person whose records are involved." Mo. Ann. Stat. §324.001.8; *see also id.* §324.017. All complaints or charges identified by the State of Missouri are privileged and will be logged.

The Arkansas State Medical Board has received and examined several complaints against physicians involving racial discrimination. The Board closed all cases for lack of evidence, not because racial discrimination in healthcare is somehow permitted. Likewise, the Arkansas Board of Examiners in Counseling received and examined several complaints against providers involving racial discrimination.

Alabama, Kentucky, and Mississippi have not identified any complaints or charges of racial discrimination against healthcare providers since 2020 that resulted in an investigative action.

Montana has identified at least one case where a health care provider had a finding against them based on racial discrimination. The details of the case and findings are confidential under State law. *See* Admin. R. Mont. 24.8.210.

The absence of complaints or charges does not mean that the States do not prohibit racial discrimination by healthcare providers, or that they do not wish to enforce their anti-discrimination laws when applicable and when they discover racial discrimination.

**3.     Discussing each State individually, describe in detail all enforcement actions each Plaintiff State has taken against health care providers for racial discrimination since May 1, 2012, including but not limited to enforcement actions against MIPS eligible professionals due to anti-racism plans.**

**Objections**: Plaintiffs object to providing information going back to 2012—ten years before this case was filed, ten years before the challenged rule was promulgated, and across multiple administrations with significant personnel turnover—as not proportional. Plaintiffs object to providing "all" enforcement actions as not proportional. Plaintiffs object to the undefined term "enforcement action" as vague and not proportional, as it could encompass any number of actions by any number of state entities, university, hospitals, employers, and more. Additionally, complaints, charges, and resolutions involve confidential information that cannot be publicly disclosed, as explained below.

**Response**: To the extent "enforcement action" means a lawsuit brought under a public-accommodation statute by the State itself, Alabama, Arkansas, Kentucky, Louisiana, Mississippi, and Missouri have not identified any enforcement actions against healthcare providers for racial discrimination that the State itself has initiated since 2020. The absence of an enforcement action does not mean that the States do not prohibit racial discrimination by healthcare providers, or that they do not wish to enforce their anti-discrimination laws when applicable and when they discover racial discrimination. Federal laws also ban racial discrimination, and the States rely in part on those laws to police discrimination. But they can't rely on those laws here because the

Anti-Racism Rule—a federal regulation—encourages the kind of discrimination at issue.

Montana has identified at least one case where a health care provider had a finding against them based on racial discrimination. The details of the case and findings are confidential under State law. *See* Admin. R. Mont. 24.8.210.

4. **Discussing each State individually, identify by name and address all MIPS eligible professionals in each Plaintiff State that did not receive a full score in the MIPS clinical practice improvement activity performance category and did not complete an anti-racism plan because of a perceived conflict or dilemma with state law. For each MIPS eligible professional identified, describe (1) how the State learned that the MIPS eligible professional did not complete an anti-racism plan because of a perceived conflict or dilemma with state law, (2) when the State learned this information, and (3) how the MIPS eligible professional's failure to complete an anti-racism plan harmed a substantial segment of the State's population or the state's economy.**

**Objections**: The request for the "name and address [of] all MIPS eligible professionals in each Plaintiff State that did not receive a full score" is not proportional because Defendants already have—and *only* Defendants can access—this granular information. The request to identify "all" MIPS eligible professionals that acted "because of a perceived conflict or dilemma with state law" is not proportional because Plaintiffs cannot ascertain (at least not without excessive burdens) the reason every provider in their States did not adopt an anti-racism plan.

**Response**: Interpreting this interrogatory to ask whether Plaintiffs have been told by a provider that the provider would adopt an antiracism plan if not for state law, no provider has told Plaintiffs that yet.

15

**5.    Discussing each State individually, describe in detail the nature and amount of all increased costs incurred by each Plaintiff State due to MIPS eligible professionals who did not complete an anti-racism plan.**

<u>**Objections**</u>: Plaintiffs object to this request as not proportional because "costs" is vague and not defined, because the "amount" of all the various monetary and nonmonetary costs cannot be described (at least without excessive burden) "in detail," and because the nature and amount are not relevant to any question in the case.

<u>**Response:**</u> To resolve the parties' dispute over this request, Plaintiffs will not advance a theory of standing based on increased costs incurred from MIPS eligible professionals not completing an anti-racism plan.

Dated: May 29, 2024                          Respectfully submitted,
Amended: June 17, 2024
Amended: October 15, 2024

<u>*s/ Justin L. Matheny*</u>
LYNN FITCH                                   <u>*s/ Cameron T. Norris*</u>
  *Attorney General*                         Cameron T. Norris*
Scott G. Stewart (MS Bar No. 106359)         CONSOVOY MCCARTHY PLLC
  *Solicitor General*                        1600 Wilson Blvd., Ste. 700
Justin L. Matheny (MS Bar No. 100754)        Arlington, VA 22209
  *Deputy Solicitor General*                 (703) 243-9423
MISSISSIPPI ATTORNEY                          cam@consovoymccarthy.com
GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
scott.stewart@ago.ms.gov
justin.matheny@ago.ms.gov

*s/ Edmund G. LaCour Jr.*
STEVE MARSHALL
  *Attorney General*
Edmund G. LaCour Jr.*
  *Solicitor General*
OFFICE OF THE ALABAMA
ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
(334) 353-2196
Edmund.LaCour@AlabamaAG.gov

*s/ Nicholas J. Bronni*
TIM GRIFFIN
  *Attorney General*
Nicholas J. Bronni*
  *Solicitor General*
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-6302
nicholas.bronni@arkansasag.gov

*s/ Aaron J. Silletto*
RUSSELL COLEMAN
  *Attorney General*
Aaron J. Silletto*
  *Assistant Attorney General*
KENTUCKY OFFICE OF THE
ATTORNEY GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky
(502) 696-5439
Aaron.Silletto@ky.gov

*s/ Kelsey L. Smith*
ELIZABETH B. MURRILL*
  *Attorney General*
Kelsey L. Smith*
  *Deputy Solicitor General*
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
(225) 428-7432
smithkel@ag.louisiana.gov

*s/ Joshua M. Divine*
ANDREW BAILEY
  *Attorney General*
Joshua M. Divine*
  *Solicitor General*
Samuel C. Freedlund*
  *Deputy Solicitor General*
OFFICE OF THE MISSOURI
ATTORNEY GENERAL
815 Olive Street
Suite 200
St. Louis, MO 63101
(314) 340-4869
Josh.Divine@ago.mo.gov
Samuel.Freedlund@ago.mo.gov

*s/ Christian Corrigan*
AUSTIN KNUDSEN
  *Attorney General*
Christian Corrigan*
  *Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders Street
Helena, MT 59601
christian.corrigan@mt.gov

*pro hac vice

## CERTIFICATE OF SERVICE

Plaintiffs emailed everyone requiring service.

Dated: May 29, 2024                                    *s/ Cameron T. Norris*

Amended: June 17, 2024

Amended: October 15, 2024

## VERIFICATION OF INTERROGATORIES

**Alabama**

I declare under penalty of perjury that the above responses to interrogatories for the State of Alabama are true and correct to the best of my knowledge.

Executed on the 31st of May, 2024.

E. WILSON HUNTER
*General Counsel*
ALABAMA STATE BOARD OF MEDICAL EXAMINERS
848 Washington Ave.
Montgomery, AL 36104
(334) 833-0188
whunter@albme.gov

## <u>AFFIDAVIT OF Phillip Matthew Gilmore</u>

I am currently the Boards and Commissions Coordinator for the Arkansas Department of Health, serving since 2019.

I declare under penalty of perjury that the above response to interrogatories for the State of Arkansas are true and correct to the best of my knowledge.


_____          5/31/24
Phillip Matthew Gilmore                          _____
Boards and Commissions Coordinator       DATE
Arkansas Department of Health


State of Arkansas  )
                                 )SS
County of Pulaski  )

Subscribed and sworn to before me this _31_ day of _May_, 2024.


                                          _____
                                          Notary Public


My Commission Expires:

_11.01.31_

**Kentucky**

I declare under penalty of perjury that the above responses to interrogatories for the
Commonwealth of Kentucky are true and correct to the best of my knowledge.

5/30/24
Date

Christopher L. Thacker
General Counsel
Kentucky Office of the Attorney General

Louisiana

I declare under penalty of perjury that the above responses to interrogatories for the State of Louisiana are true and correct to the best of my knowledge.

Date: 6/11/2024

Nicholas Gachassin, III
Executive Counsel
Louisiana Department of Health

Missouri

I declare under penalty of perjury that the above responses to interrogatories for the State of Missouri are true and correct to the best of my knowledge.

_____          10/1/2024
Caleb Rutledge                                              Date
Assistant Attorney General
Office of the Attorney General

**Mississippi**

I declare under penalty of perjury that the above responses to interrogatories for the State of Mississippi are true and correct to the best of my knowledge.

Whitney H. Lipscomb
Deputy Attorney General
Mississippi Attorney General's Office

**Montana**

I declare under penalty of perjury that the above response to Interrogatory No. 1 for the State of Montana with respect to the Montana Department of Public Health and Human Services are true and correct to the best of my knowledge.


_R de Camara_                                                                 **10/15/24**
Rebecca de Camara                                                                     Date
Executive Director, Medicaid and Health Services, and State Medicaid Director
Montana Department of Public Health and Human Services

**Montana**

I declare under penalty of perjury that the above responses to interrogatories for the State of Montana are true and correct to the best of my knowledge to the extent that the response(s) involves application, or interpretation claims that arise under the laws enforced by the Department of Labor and Industry's Human Rights Bureau, specifically Montana Code Annotated Title 49, Chapters 2 and 3.

_____          10·15·24
Marieke Beck                                Date
Bureau Chief / Human Rights Bureau
Montana Dep't of Labor and Industry