# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, *et al.*,<br><br>    Defendants. | Civil Action No. 1:22-cv-00113-HSO-RPM |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, and pursuant to the court's March 28, 2024 Memorandum Opinion and Order and April 10, 2024 Scheduling Order, Defendants Xavier Becerra, in his official capacity as Secretary of Health and Human Services; the United States Department of Health and Human Services; Chiquita Brooks-LaSure, in her official capacity as Administrator of the Centers for Medicare & Medicaid Services; the Centers for Medicare & Medicaid Services; and the United States of America (collectively, "Defendants"), hereby submit these objections and responses to Plaintiffs' Second Set of Interrogatories.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

8. "Large practice" means any medical practice and/or provider consisting of more than one eligible clinician/person during the MIPS determination period that is not a small practice.

**OBJECTION:** Defendants object to the definition of "large practice" as inconsistent with the practice size definition used by the Centers for Medicare & Medicaid Services (CMS) in collecting clinician data for purposes of MIPS. In CMS performance year reports, practices are defined as groupings of clinicians billing under a practice's Tax Identification Number (TIN) of 2-15


clinicians, 16-99 clinicians, and 100 or more clinicians. *See, e.g.*, CENTERS FOR MEDICARE AND MEDICAID SERVICES, "2022 Quality Payment Program (QPP) Data Use Guide," *available at*: https://qpp.cms.gov/resources/performance-data#public-data-files-2022. Adopting Plaintiffs' definition of "large practice" would require Defendants to incur additional burden disproportionate to any evidentiary need in this case by re-classifying, in a less precise manner, the size of the group to which a clinician belongs.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify every person who declared to Defendants completion of an anti-racism plan as a clinical practice improvement activity in performance years 2022 and/or 2023 and state their (a) names and addresses, (b) scores in each of the four performance categories by year, (c) composite scores by year, and (d) status as a solo, small, or large practice. List persons with addresses in the Plaintiff States first.

**OBJECTIONS TO INTERROGATORY NO. 1:**

Defendants object to this Interrogatory on the grounds that the requirement to identify "every person," including those outside the Plaintiff States, is overly broad, unduly burdensome, and not proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b). Whether clinicians outside the Plaintiff States completed an anti-racism plan as a clinical practice improvement activity in performance years 2022 and/or 2023 has no relevance to Plaintiffs' standing, and therefore exceeds the "limited discovery on the question of standing" that this Court authorized, *see* ECF No. 135 at 45.

Defendants further object to this Interrogatory on the grounds that the categories of "solo, small, or large" are not the categories of "Practice Size" used by CMS in collecting clinician data for purposes of MIPS. In CMS performance year reports, practices are defined as groupings of clinicians billing under a practice's Tax Identification Number (TIN) of 2-15 clinicians, 16-99 clinicians, and 100 or more clinicians. *See, e.g.*, CENTERS FOR MEDICARE AND MEDICAID

SERVICES, "2022 Quality Payment Program (QPP) Data Use Guide," *available at*: https://qpp.cms.gov/resources/performance-data#public-data-files-2022.

Defendants further object to this Interrogatory on the grounds that final scoring information, including "scores in each of the four performance categories" and "composite scores by year," for performance year 2023 will not be available until after the Targeted Review period has ended following the release of payment adjustments, which Defendants expect based on historical practice to occur by November 2024.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to the foregoing objections, Defendants have produced as HHS_00000511 an Excel spreadsheet listing: (a) the names of individual clinicians who have attested to, or have otherwise obtained credit for, the creation and implementation of an anti-racism plan as a clinical practice improvement activity in the performance years 2022 and/or 2023; (b) the addresses of those individual clinicians, where available; (c) those individual clinician's scores in each of the four performance categories by year; (d) those individual clinician's composite scores by year; and (e) the practice size of the group to which the individual clinician belongs, categorized as solo, small (2-15 clinicians), medium (16-99 clinicians), or large (100 or more clinicians). Defendants further note that the scoring information for performance year 2023 contained in HHS_00000511, including "scores in each of the four performance categories" and "composite scores by year," is not yet final. Defendants further note that the list includes clinicians who did not themselves attest to the creation and implementation of an anti-racism plan as a clinical practice improvement activity in the performance years 2022 and/or 2023 but nonetheless are receiving credit for the activity by billing for a continuous 90-day period within the same performance year under the TIN of a group within which at least 50% of the clinicians completed the activity.

**INTERROGATORY NO. 2:** For every person in the Plaintiff States who did not obtain a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023 and did not declare or attest to Defendants that they created and implemented an anti-racism plan, identify and state their (a) names and addresses, (b) scores in each of the four performance categories by year, (c) composite scores by year, and (d) status as a solo, small, or large practice.

**OBJECTIONS TO INTERROGATORY NO. 2:**

Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b). Whether clinicians inside the Plaintiff States did not obtain a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023 and did not declare or attest to Defendants that they created and implemented an anti-racism plan has no relevance to Plaintiffs' standing, and therefore exceeds the "limited discovery on the question of standing" that this Court authorized, ECF No. 135 at 45.

Defendants further object to this Interrogatory on the grounds that the categories of "solo, small, or large" are not the categories of "Practice Size" used by CMS in collecting clinician data for purposes of MIPS. In CMS performance year reports, practices are defined as groupings of clinicians billing under a practice's Tax Identification Number (TIN) of 2-15 clinicians, 16-99 clinicians, and 100 or more clinicians. *See, e.g.*, CENTERS FOR MEDICARE AND MEDICAID SERVICES, "2022 Quality Payment Program (QPP) Data Use Guide," *available at*: https://qpp.cms.gov/resources/performance-data#public-data-files-2022.

Defendants further object to this Interrogatory on the grounds that final scoring information, including "scores in each of the four performance categories" and "composite scores by year," for performance year 2023 will not be available until after the Targeted Review period has ended following the release of payment adjustments, which Defendants expect based on historical practice to occur by November 2024.

4

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to the foregoing objections, Defendants have produced as HHS_00000511 an Excel spreadsheet listing: (a) the names of individual clinicians in the Plaintiffs States who did not obtain a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023 and did not declare or attest to Defendants that they created and implemented an anti-racism plan; (b) the addresses of those individual clinicians, where available; (c) those individual clinician's scores in each of the four performance categories by year; (d) those individual clinician's composite scores by year; and (e) the practice size of the group to which the individual clinician belongs, categorized as solo, small (2-15 clinicians), medium (16-99 clinicians), or large (100 or more clinicians). Defendants further note that the scoring information for performance year 2023 contained in HHS_00000511, including "scores in each of the four performance categories" and "composite scores by year," is not yet final.

> **INTERROGATORY NO. 3:** Identify every person who made an inquiry to or sought guidance from Defendants about anti-racism plans or the Disparities Impact Statement for performance year 2022 and/or performance year 2023 and state (a) the names and addresses of such persons, (b) the substance of the communication to Defendants, and (c) the substance of Defendants' response, if any.

**OBJECTIONS TO INTERROGATORY NO. 3:**

Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b). Whether clinicians made an inquiry to or sought guidance from Defendants about anti-racism plans or the Disparities Impact Statement has no relevance to Plaintiffs' standing, and therefore exceeds the "limited discovery on the question of standing" that this Court authorized, ECF No. 135 at 45.

**RESPONSE TO INTERROGATORY NO. 3:**

Subject to the foregoing objection and pursuant to Federal Rule of Civil Procedure 33(d), which permits Defendants the option to produce documents where the burden of ascertaining the

5

answer will be substantially the same for either party, Defendants refer Plaintiffs to the records produced as HHS_00000204 to HHS_00000233, HHS_00000240 to HHS_00000382, and HHS_00000509.  The records produced as HHS_00000204 to HHS_00000233, HHS_00000240 to HHS_00000382, and HHS_00000509 contain all information that HHS and CMS possess concerning inquiries to or requests for guidance from HHS and CMS regarding anti-racism plans or the Disparities Impact Statement received during performance year 2022 and/or performance year 2023.

> **INTERROGATORY NO. 4:**  Describe (a) how Defendants verify that persons completed anti-racism plans as clinical practice improvement activities and (b) the documentation Defendants request of such persons.

**OBJECTIONS TO INTERROGATORY NO. 4:**

Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b).  Whether and how Defendants verify that persons completed anti-racism plans as clinical improvement activities and the documentation that Defendants request of such persons has no relevance to Plaintiffs' standing, and therefore exceeds the "limited discovery on the question of standing" that this Court authorized, ECF No. 135 at 45.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to the foregoing objection, Defendants state that there is no process to verify that persons completed anti-racism plans as clinical practice improvement activities for the performance years 2022 and 2023, which are the only two performance years for which the anti-racism plan clinical practice improvement activity has existed.

Defendants further state that Defendants do not require that clinicians maintain any documentation pertaining to the completion of anti-racism plans as clinical practice improvement activities for the performance years 2022 and 2023.  As with any clinical practice improvement

6

activity, clinicians attest that they have undertaken the anti-racism plan improvement activity but do not otherwise submit documentation at the time of certification to verify completion of the improvement activity. While completion of certain clinical practice improvement activities can be audited to verify completion, Defendants state that the anti-racism plan improvement activity was not an audited clinical practice improvement activity for the performance years 2022 and 2023.

Defendants further state that Defendants encourage clinicians to reference CENTERS FOR MEDICARE AND MEDICAID SERVICES, "2024 MIPS Data Validation – Improvement Activities Performance Category Criteria," *available at*: https://qpp.cms.gov/mips/improvement-activities, to determine what documentation clinicians should retain. That resource specifies the following as "Validation Documentation" for MIPS IA_AHE_8:

> Evidence of a practice-wide review and implementation of an anti-racism plan. Please note that, although the CMS Disparities Statement does not mention racism, it can be effectively used to facilitate the completion of the requirements of this activity. Include all of the following elements:
> 1) **Review** – Documentation of a practice-wide review of existing tools and policies; AND
> 2) **Assessment memo** – Completion of an assessment memo summarizing the results of the above review; AND
> 3) **Anti-Racism Plan** – A new or updated anti-racism plan, which includes actions, intended outcomes, and timeline for completion for the eligible clinician's practice; this plan must identify ways in which issues and gaps identified in the review can be addressed and should include target goals and milestones, and the eligible clinician or practice should also consider including training on anti-racism to support identifying explicit and implicit biases in patient care and addressing historic health inequities experienced by people of color; AND
> 4) **Plan Implementation** – Report with results from implementing the new or updated anti-racism plan.

Dated:  May 29, 2024                                   Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ Alexander W. Resar*
BRIAN C. ROSEN-SHAUD
ALEXANDER W. RESAR
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8188
Email: alexander.w.resar@usdoj.gov

*Counsel for Defendants*

## VERIFICATION OF INTERROGATORIES

I declare under penalty of perjury that the foregoing responses to interrogatories are true and correct to the best of my knowledge.

_Aucha Prachanronarong -S_
Digitally signed by Aucha Prachanronarong -S
Date: 2024.05.29 16:53:33 -04'00'

_____
Aucha Prachanronarong
Director
Division of Clinician Quality
Quality Measurement and Value-based Incentives Group
Center for Clinical Standards and Quality
Centers for Medicare & Medicaid Services
Department of Health and Human Services