# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, *et al.*,<br><br>Defendants. | Civil Action No. 1:22-cv-00113-HSO-RPM |

**DEFENDANTS' AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and pursuant to the court's March 28, 2024 Memorandum Opinion and Order and April 10, 2024 Scheduling Order, Defendants Xavier Becerra, in his official capacity as Secretary of Health and Human Services; the United States Department of Health and Human Services; Chiquita Brooks-LaSure, in her official capacity as Administrator of the Centers for Medicare & Medicaid Services; the Centers for Medicare & Medicaid Services; and the United States of America (collectively, "Defendants"), hereby submit these amended objections and responses to Plaintiffs' Second Set of Interrogatories. Defendants amend only those responses to the Interrogatories included herein.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

8. "Large practice" means any medical practice and/or provider consisting of more than one eligible clinician/person during the MIPS determination period that is not a small practice.

**OBJECTION:** Defendants object to the definition of "large practice" as inconsistent with the practice size definition used by the Centers for Medicare & Medicaid Services (CMS) in collecting clinician data for purposes of MIPS. In CMS performance year reports, practices are defined as

groupings of clinicians billing under a practice's Tax Identification Number (TIN) of 2-15 clinicians, 16-99 clinicians, and 100 or more clinicians. *See, e.g.*, CENTERS FOR MEDICARE AND MEDICAID SERVICES, "2022 Quality Payment Program (QPP) Data Use Guide," *available at*: https://qpp.cms.gov/resources/performance-data#public-data-files-2022. Adopting Plaintiffs' definition of "large practice" would require Defendants to incur additional burden disproportionate to any evidentiary need in this case by re-classifying, in a less precise manner, the size of the group to which a clinician belongs.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify every person who declared to Defendants completion of an anti-racism plan as a clinical practice improvement activity in performance years 2022 and/or 2023 and state their (a) names and addresses, (b) scores in each of the four performance categories by year, (c) composite scores by year, and (d) status as a solo, small, or large practice. List persons with addresses in the Plaintiff States first.

**OBJECTIONS TO INTERROGATORY NO. 1:**

Defendants object to this Interrogatory on the grounds that the requirement to identify "every person," including those outside the Plaintiff States, is overly broad, unduly burdensome, and not proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b). Whether clinicians outside the Plaintiff States completed an anti-racism plan as a clinical practice improvement activity in performance years 2022 and/or 2023 has no relevance to Plaintiffs' standing, and therefore exceeds the "limited discovery on the question of standing" that this Court authorized, *see* ECF No. 135 at 45.

Defendants further object to this Interrogatory on the grounds that the categories of "solo, small, or large" are not the categories of "Practice Size" used by CMS in collecting clinician data for purposes of MIPS. In CMS performance year reports, practices are defined as groupings of clinicians billing under a practice's Tax Identification Number (TIN) of 2-15 clinicians, 16-99

2

clinicians, and 100 or more clinicians.  *See, e.g.*, CENTERS FOR MEDICARE AND MEDICAID SERVICES, "2022 Quality Payment Program (QPP) Data Use Guide," *available at*: https://qpp.cms.gov/resources/performance-data#public-data-files-2022.

Defendants further object to this Interrogatory on the grounds that final scoring information, including "scores in each of the four performance categories" and "composite scores by year," for performance year 2023 will not be available until after the Targeted Review period has ended following the release of payment adjustments, which Defendants expect based on historical practice to occur by November 2024.

**AMENDED RESPONSE TO INTERROGATORY NO. 1:**

Subject to the foregoing objections, Defendants have produced as HHS_00000511 an Excel spreadsheet listing:  (a) the names of individual clinicians who have attested to, or have otherwise obtained credit for, the creation and implementation of an anti-racism plan as a clinical practice improvement activity in the performance years 2022 and/or 2023; (b) the addresses of those individual clinicians, where available; (c) those individual clinician's scores in each of the four performance categories by year; (d) those individual clinician's composite scores by year; and (e) the practice size of the group to which the individual clinician belongs, categorized as solo, small (2-15 clinicians), medium (16-99 clinicians), or large (100 or more clinicians).  Defendants previously noted that the scoring information for performance year 2023 contained in HHS_00000511, including "scores in each of the four performance categories" and "composite scores by year," is not yet final.  As Defendants have now received updated information for performance year 2023, Defendants will produce as HHS_00000512 an Excel spreadsheet listing: (a) the names of individual clinicians who have attested to, or have otherwise obtained credit for, the creation and implementation of an anti-racism plan as a clinical practice improvement activity in the performance year 2023; (b) the addresses of those individual clinicians, where available; (c)

those individual clinician's scores in each of the four performance categories by year; (d) those individual clinician's composite scores by year; and (e) the practice size of the group to which the individual clinician belongs, categorized as solo, small (2-15 clinicians), medium (16-99 clinicians), or large (100 or more clinicians). Defendants reiterate, however, that the scoring information for performance year 2023 contained in HHS_00000512, including "scores in each of the four performance categories" and "composite scores by year," is not yet final. Defendants further note that the list contained in both HHS_00000511 and HHS_00000512 includes clinicians who did not themselves attest to the creation and implementation of an anti-racism plan as a clinical practice improvement activity in the performance years 2022 and/or 2023 but nonetheless are receiving credit for the activity by billing for a continuous 90-day period within the same performance year under the TIN of a group within which at least 50% of the clinicians completed the activity.

> **INTERROGATORY NO. 2:** For every person in the Plaintiff States who did not obtain a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023 and did not declare or attest to Defendants that they created and implemented an anti-racism plan, identify and state their (a) names and addresses, (b) scores in each of the four performance categories by year, (c) composite scores by year, and (d) status as a solo, small, or large practice.

**OBJECTIONS TO INTERROGATORY NO. 2:**

Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b). Whether clinicians inside the Plaintiff States did not obtain a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023 and did not declare or attest to Defendants that they created and implemented an anti-racism plan has no relevance to Plaintiffs' standing, and therefore exceeds the "limited discovery on the question of standing" that this Court authorized, ECF No. 135 at 45.

Defendants further object to this Interrogatory on the grounds that the categories of "solo, small, or large" are not the categories of "Practice Size" used by CMS in collecting clinician data for purposes of MIPS. In CMS performance year reports, practices are defined as groupings of clinicians billing under a practice's Tax Identification Number (TIN) of 2-15 clinicians, 16-99 clinicians, and 100 or more clinicians. *See, e.g.*, CENTERS FOR MEDICARE AND MEDICAID SERVICES, "2022 Quality Payment Program (QPP) Data Use Guide," *available at*: https://qpp.cms.gov/resources/performance-data#public-data-files-2022.

Defendants further object to this Interrogatory on the grounds that final scoring information, including "scores in each of the four performance categories" and "composite scores by year," for performance year 2023 will not be available until after the Targeted Review period has ended following the release of payment adjustments, which Defendants expect based on historical practice to occur by November 2024.

**AMENDED RESPONSE TO INTERROGATORY NO. 2:**

Subject to the foregoing objections, Defendants have produced as HHS_00000511 an Excel spreadsheet listing: (a) the names of individual clinicians in the Plaintiffs States who did not obtain a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023 and did not declare or attest to Defendants that they created and implemented an anti-racism plan; (b) the addresses of those individual clinicians, where available; (c) those individual clinician's scores in each of the four performance categories by year; (d) those individual clinician's composite scores by year; and (e) the practice size of the group to which the individual clinician belongs, categorized as solo, small (2-15 clinicians), medium (16-99 clinicians), or large (100 or more clinicians). Defendants further note that the scoring information for performance year 2023 contained in as HHS_00000511, including "scores in each of the four performance categories" and "composite scores by year," is not yet final.

Defendants determined, however, that the information contained in HHS_00000511 responsive to this interrogatory was over-inclusive because HHS_00000511 included clinicians who did not participate in the Merit-based Incentive Payment System and therefore did not satisfy Plaintiffs' definition of "Person" and clinicians who claimed a hardship exemption, including those pertaining to the COVID-19 public health emergency, to avoid submitting data pertaining to and being scored on the clinical practice improvement activity category.  Defendants also determined that the information contained in HHS_00000511 responsive to this interrogatory was under-inclusive because HHS_00000511 omitted clinicians who did not obtain a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023 and did not declare or attest to Defendants that they created or implemented an anti-racism plan. Accordingly, Defendants are producing in HHS_00000513 a spreadsheet containing a list of all clinicians in the Plaintiff States (1) whose composite score was impacted by the clinical practice improvement activities category score and (2) who did not receive a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023.  Because Defendants lack any non-disproportionally-burdensome means to filter this information to omit the clinicians who received credit for the anti-racism plan clinical practice improvement activity, Defendants note that the list contained in HHS_00000513 is still potentially over-inclusive in that it would include, if any exist, clinicians (1) who received credit for the anti-racism plan clinical practice improvement category; (2) whose composite score was impacted by the clinical practice improvement activities category score; and (3) who did not receive a full score for clinical practice improvement activities for performance year 2022 and/or performance year 2023.

Dated:  July 17, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ Alexander W. Resar*
BRIAN C. ROSEN-SHAUD
ALEXANDER W. RESAR
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8188
Email: alexander.w.resar@usdoj.gov

*Counsel for Defendants*

## VERIFCIATION OF INTERROGATORIES

      I declare under penalty of perjury that the foregoing amended responses to interrogatories are true and correct to the best of my knowledge.

_Aucha Prachanronarong -S_
Digitally signed by Aucha Prachanronarong -S
Date: 2024.07.17 17:20:57 -04'00'

Aucha Prachanronarong
Director
Division of Clinician Quality
Quality Measurement and Value-based Incentives Group
Center for Clinical Standards and Quality
Centers for Medicare & Medicaid Services
Department of Health and Human Services