# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF ARKANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSOURI; and STATE OF MONTANA,<br>*Plaintiffs*,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; THE UNITED STATES OF AMERICA,<br>*Defendants*. | Case No. 1:22-cv-113-HSO-RPM |

## DECLARATION OF A. BARRETT BOWDRE

I, A. Barrett Bowdre, declare and state as follows under 28 U.S.C. § 1746:

1. I am over the age of eighteen and under no mental disability or impairment.

2. I am the Principal Deputy Solicitor General in the Office of the Attorney General for the State of Alabama. In that capacity, I review and research state and federal law, and compile information and documents for civil discovery. I also advise and consult on the proper interpretation of state laws. I am authorized to declare the State's interpretation of the laws referred to below.

3. I am aware of the final rule promulgated by the Centers for Medicare & Medicaid Services that is the subject of this litigation. The rule created a new clinical practice improvement activity for eligible health care professionals titled "Create and Implement an Anti-Racism Plan."

4. I understand that clinicians in Alabama have attested to creating and implementing anti-racism plans under the rule.

5. The rule says that those plans must involve a "clinic-wide review of existing tools and policies, such as value statements or clinical practice guidelines, to ensure that they include and are aligned with a commitment to anti-racism and an understanding of race as a political and social

construct, not a physiological one." Anti-racism plans must include "target goals and milestones for addressing" priorities. To that end, clinicians must "[c]reate and implement an anti-racism plan using the CMS Disparities Impact Statement or other anti-racism planning tools."

6. I have also reviewed the CMS Disparities Impact Statement. The document begins by affirming that the "tool can be used by all health care stakeholders for racial and ethnic minorities" and other minority groups. p. 1. Clinicians must "[i]dentify … priority populations." *Id.* The document tells clinicians that "[s]tratifying measures and health outcomes by race and ethnicity can help you get started." p. 2. Clinicians must write "[w]hat population(s) [they] will … prioritize." *Id.*

7. The Anti-Racism Rule therefore incentivizes clinicians in Alabama to prioritize by race or ethnicity.

8. Alabama regulations prohibit racially discriminatory practices related to healthcare. In Alabama, Ala. Code § 34-24-360(2) provides: "The Medical Licensure Commission shall have the power and duty to suspend, revoke, or restrict any license to practice medicine or osteopathy in the State of Alabama or place on probation or fine any licensee whenever the licensee shall be found guilty on the basis of substantial evidence of any of the following acts or offenses: … Unprofessional conduct as defined herein or in the rules and regulations promulgated by the commission." The Commission, in turn, has defined "unprofessional conduct" to "mean the Commission or omission of any act that is detrimental or harmful to the patient of the physician or detrimental or harmful to the health, safety, and welfare of the public, and which violates the high standards of honesty, diligence, prudence and ethical integrity demanded from physicians and osteopaths licensed to practice in the State of Alabama." Ala. Admin. Code 545-X-4-.06. The Commission provides examples of unprofessional conduct, including: "Conduct which is immoral and which is willful, shameful, and which shows a moral indifference to the standards and opinions of the community." 545-X-4-.06(9).

9. It would be unethical and thus unprofessional conduct under these regulations for a physician to discriminate against a patient based on his or her race.

10. Other regulations likewise prohibit certain racially discriminatory practices related to healthcare. *E.g.*, Ala. Admin. Code 420-5-4-.03(2)(d) (assisted living facilities); 420-5-20-.03(2)(d) (specialty care assisted living facilities); 420-5-10-.03(4) (nursing facilities).

11. Creating and implementing an anti-racism plan, as conceived by the Rule and in the CMS Disparities Impact Statement, thus violates Alabama's regulations to the extent such a plan discriminates against a patient based on race or prioritizes a patient population based on race or ethnicity. Alabama's regulations do not permit Alabama clinicians or medical professionals to prioritize patient populations based on race or ethnicity. Race or ethnicity should not be considered in medical practice except when physiologically relevant.

12. The Anti-Racism Rule therefore frustrates the continued enforceability of Alabama's regulations. But for the Rule—a federal regulation that authorizes these anti-racism plans—Alabama's regulations would be enforceable against such plans.

Per 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 15, 2024

                                          */s/ A. Barrett Bowdre*
                                          A. Barrett Bowdre
                                          Principal Deputy Solicitor General