# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF ARKANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSOURI; and STATE OF MONTANA, *Plaintiffs*, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; THE UNITED STATES OF AMERICA, *Defendants*. | Case No. 1:22-cv-113-HSO-RPM |

## DECLARATION OF CHRISTOPHER L. THACKER

I, CHRISTOPHER L. THACKER, declare and state as follows under 28 U.S.C. §1746:

1. I am over the age of eighteen and under no mental disability or impairment.

2. I am General Counsel in the Kentucky Office of Attorney General. In that capacity, I serve as strategic and legal counsel to the Attorney General and his Office.

3. I am aware of the final rule promulgated by the Centers for Medicare & Medicaid Services that is the subject of this litigation. The rule created a new clinical practice improvement activity for eligible health care professionals titled "Create and Implement an Anti-Racism Plan."

4. I understand that clinicians in Kentucky have attested to creating and implementing anti-racism plans under the rule.

5. The rule says that those plans must involve a "clinic-wide review of existing tools and policies, such as value statements or clinical practice guidelines, to ensure that they include and are aligned with a commitment to anti-racism and an understanding of race as a political and social construct, not a physiological one." Anti-racism plans must include "target goals and milestones for

addressing" priorities. To that end, clinicians must "[c]reate and implement an anti-racism plan using the CMS Disparities Impact Statement or other anti-racism planning tools."

6. I have also reviewed the CMS Disparities Impact Statement. The document begins by affirming that the "tool can be used by all health care stakeholders for racial and ethnic minorities" and other minority groups. Clinicians must "[i]dentify … priority populations." The document tells clinicians that "[s]tratifying measures and health outcomes by race and ethnicity can help you get started." Clinicians must write "[w]hat population(s) [they] will … prioritize."

7. The Anti-Racism Rule therefore incentivizes clinicians in Kentucky to prioritize by race or ethnicity.

8. Kentucky law prohibits racial discrimination in the provision of health care. *See* Ky. Rev. Stat. Ann. §344.010 *et seq.* Kentucky law seeks to "provide for execution within the state of the policies embodied in" federal civil rights statutes, including "the Federal Civil Rights Act of 1964," and "[t]o safeguard all individuals within the state from discrimination because of … race." §344.020(a), (b). Places of public accommodation generally include "any place … or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public or which is supported directly or indirectly by government funds." §344.130. Kentucky bans denying "an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation … on the ground of … race." §344.120. It also bans certain racially discriminatory printed materials. §344.140.

9. Regulations also prohibit racial discrimination in the provision of health care. *See* 907 Ky. Admin. Regs. 1:671 §1(40)(l) ("'Unacceptable practice' means conduct by a provider" that can include "[d]iscriminating in the furnishing of medical care, services, or supplies"); §6(3) ("A provider's participation may be terminated and a period of exclusion imposed, if an administrative determination is made … that the provider engaged in an unacceptable practice."); 1:672 §2(6)(i)–(k) (prohibiting "unacceptable practice" and requiring compliance with federal and state law); §2(7)(a)(8) (denying

enrollment to providers that engage in unacceptable practices).; §5(12) (unacceptable practices include "[d]iscriminating in the furnishing of medical care, services, or supplies").

10. Medical professionals are not exempt from these anti-discrimination laws. Medical practices and professionals provide medical "services to the general public." Ky. Rev. Stat. Ann. §344.130. Patients therefore have a right "to the full and equal enjoyment" of the medical "services, facilities, privileges, advantages, and accommodations" that medical practices and professionals provide without respect to race. §344.120. These laws are alive and well and therefore operate to protect patients from discriminatory conduct.

11. Creating and implementing an anti-racism plan, as conceived by the Rule and in the CMS Disparities Impact Statement, violates Kentucky's anti-discrimination laws and regulations. It is not lawful in Kentucky to prioritize patient populations based on race or ethnicity. Race or ethnicity should not be considered in medical practice except when physiologically relevant.

12. The Anti-Racism Rule therefore frustrates the continued enforceability of Kentucky's anti-discrimination laws. But for Rule—a federal regulation that authorizes these anti-racism plans—Kentucky's laws would be enforceable against such plans.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 08, 2024

*/s/ Christopher L. Thacker*
CHRISTOPHER L. THACKER
GENERAL COUNSEL
COMMONWEALTH OF KENTUCKY
OFFICE OF ATTORNEY GENERAL