IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF ARKANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSOURI; and STATE OF MONTANA,<br>*Plaintiffs*,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; THE UNITED STATES OF AMERICA,<br>*Defendants*. | Case No. 1:22-cv-113-HSO-RPM |

## DECLARATION OF Nicholas Gachassin, III

I, Nicholas Gachassin, III declare and state as follows under 28 U.S.C. §1746:

1. I am over the age of eighteen and under no mental disability or impairment.

2. I am the Executive Counsel at the Louisiana Department of Health. In that capacity, I provide legal advice, counsel and recommendations the Louisiana Department of Health Secretary, the Louisiana Surgeon General, the Louisiana Medicaid Program, and all program offices within the Louisiana Department of Health. I oversee the Louisiana Department of Health Bureau of Legal Services and ensure departmental compliance with federal, state and local laws, rules and regulations.

3. I am aware of the final rule promulgated by the Centers for Medicare & Medicaid Services that is the subject of this litigation. The rule created a new clinical practice improvement activity for eligible health care professionals titled "Create and Implement an Anti-Racism Plan."

4. I understand that clinicians in Louisiana have attested to creating and implementing anti-racism plans under the rule.

5. The rule says that those plans must involve a "clinic-wide review of existing tools and policies, such as value statements or clinical practice guidelines, to ensure that they include and are aligned with a commitment to anti-racism and an understanding of race as a political and social construct, not a physiological one." Anti-racism plans must include "target goals and milestones for addressing" priorities. To that end, clinicians must "[c]reate and implement an anti-racism plan using the CMS Disparities Impact Statement or other anti-racism planning tools."

6. I have also reviewed the CMS Disparities Impact Statement. The document begins by affirming that the "tool can be used by all health care stakeholders for racial and ethnic minorities" and other minority groups. Clinicians must "[i]dentify ... priority populations." The document tells clinicians that "[s]tratifying measures and health outcomes by race and ethnicity can help you get started." Clinicians must write "[w]hat population(s) [they] will ... prioritize."

7. The Anti-Racism Rule therefore incentivizes clinicians in Louisiana to prioritize by race or ethnicity.

8. Louisiana law prohibits racial discrimination in the provision of health care. *See* La. Stat. Ann. §51:2231 *et seq*. In Louisiana, a place of public accommodation includes "any place ... or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or accepts the patronage or trade of the general public, or which is supported directly or indirectly by government funds." §2232(10). Discriminatory practices include "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race." §2232(5). Louisiana bans denying "an individual the full and equal enjoyment of the goods, services, privileges, advantages, and accommodations of a place of public accommodation ... on the grounds of race." §2247. Louisiana also bans certain racially discriminatory printed materials. §2248.

9. In my opinion, medical professionals are not exempt from these anti-discrimination laws. Medical practices and professionals provide medical "services to the general public" and are often "supported ... by government funds." La. Stat. Ann. §2232(10). Patients therefore have a right "to the full and equal enjoyment" of the medical "services, privileges, advantages, and

2

accommodations" that medical practices and professionals provide without respect to race. §2247. These laws are alive and well and therefore operate to protect patients from discriminatory conduct.

10. Creating and implementing an anti-racism plan, as conceived by the Rule and in the CMS Disparities Impact Statement, violates Louisiana's anti-discrimination laws. It is not lawful in Louisiana to prioritize patient populations based on race or ethnicity. Race or ethnicity should not be considered in medical practice except when physiologically relevant.

11. The Anti-Racism Rule therefore frustrates the continued enforceability of Louisiana's anti-discrimination laws. But for Rule—a federal regulation that authorizes these anti-racism plans—Louisiana's laws would be enforceable against such plans.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 15, 2024

Nicholas Gachassin, III
Executive Counsel
Louisiana Department of Health